The People *v.* Baker.

ute. I cannot see any right of appeal to the county court, from the verdict of the jury given as to this road, and it must be adjudged that all the proceedings in that court are void, for want of jurisdiction. They must be set aside.

[ALBANY GENERAL TERM, September 6, 1858. *William B. Wright, Gould* and *D. Wright*, Justices.]

————— o-o o —————

29b 81
28ap523

THE PEOPLE, *ex rel.* McConnell, *vs.* BAKER, Treasurer of Monroe county.

After money has been properly raised by a board of supervisors, for a legitimate object, they have the power to change the appropriation, and devote the money to another object equally within the scope of their powers.

The power to raise a given sum of money, for several specified objects, necessarily includes the power to designate the number to which it shall be applied, and the amount which shall be devoted to each object.

After a board of supervisors have raised a fund for the purpose of building a fire-proof clerk's and surrogate's office, they may rescind the resolution providing for the erection of such office, and appropriate the money, or a portion of it, to the erection of an addition to the county penitentiary.

MOTION for a mandamus to compel the defendant to pay a draft of $1059.39, drawn by the superintendent of the Monroe county penitentiary, to pay for labor performed and materials provided in building an addition to such penitentiary. The labor was performed under a contract made with the board of supervisors of Monroe county, by the relator, for building an addition to the Monroe county penitentiary. It appeared from the papers, upon the hearing, that the board of supervisors of the county, at their annual meeting in 1857, resolved to build a fire-proof county clerk's and surrogate's office, and for that purpose, by the issue and sale of the bonds of the county, raised a fund of $23,500, and appointed a committee with suitable powers to contract for and superintend the construction of such building. The fund was in the hands

of the county treasurer. In 1858 the board of supervisors resolved to construct an addition to the penitentiary, and for that purpose determined to discharge the committee appointed the previous year, and to appropriate $12,000 of this fund to the erection and completion of such addition. The treasurer refused to pay the draft. The payment was refused mainly on two grounds: 1st. That the penitentiary was not a county building; and 2d. That the money having been raised for another object was already appropriated, and the board had no power to change the appropriation and devote the fund to other purposes.

*H. R. Selden,* for the relator.

*S. Mathews,* for the defendant.

*By the Court,* JOHNSON, J. The defendant was right in refusing payment of the draft in question, if the board of supervisors had no power to appropriate the fund, on which it is conceded to have been drawn, to the purpose of building an addition to the penitentiary. It is a question of power in the board of supervisors of the county of Monroe. The fund, amounting to $23,500 was raised in pursuance of a resolution of the board of supervisors, at their annual meeting in 1857, by the issue and sale of bonds, and paid into the treasury, for the purpose of building a fire-proof county clerk's and surrogate's office for said county of Monroe.

By the present constitution, the legislature are authorized to confer upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration as they shall from time to time prescribe. (*Art.* 3, § 17.) In pursuance of this provision, the legislature in 1849 enlarged very considerably the powers of these bodies, both legislative and administrative. (*Sess. Laws of* 1849, *ch.* 194.) By section 4, subdivision 6 of this act, these boards were authorized to cause to be erected *necessary* buildings for

The People *v.* Baker.

poor houses, jails, clerk's and surrogate's offices, or other county buildings, and prescribe the manner of erecting the same. By sub. 7 of this section, they have power to cause to be raised by tax upon such county any sum of money to erect " any of the buildings mentioned in this act," not exceeding the sum of $5000 in any one year. By sub. 8, they are empowered to borrow money for the use of such county, to be expended in the purchase of any real estate, or for the erection of any such buildings, and to provide for the payment thereof, with interest, by tax upon such county, within ten years from the date of each loan, in yearly installments or otherwise. It is entirely clear, I think, that the penitentiary is a county building of the county of Monroe. It was built by the county, is owned by the county, and is under the exclusive supervision, management and control of county officers. It is no more nor less than a jail for the imprisonment of persons convicted of crime, who may be compelled to work, under the rules and regulations prescribed by the board of supervisors. The fact that persons in certain other counties may be sentenced to imprisonment in this building does not, in any respect, affect its character as a county building, because persons from such other counties can only be received in this building as prisoners in pursuance of an agreement entered into between the boards of supervisors of such other counties respectively and the board of supervisors of Monroe county. It is also clear, I think, that the erection of an addition to such building falls directly within the power to " cause to be erected necessary buildings" of this description. This power includes the right to make *necessary* additions and repairs, as well as to erect in the first instance. And whether this addition was necessary or not, the board of supervisors were exclusive judges.

If I am right in the position that this is a county building, it follows unavoidably that the board of supervisors might have borrowed the amount necessary to erect and complete the addition, and provide for its payment by a tax upon the

county, if such amount should not exceed the limit of the debt creating power prescribed to them by statute.

The only remaining question then is, whether the board of supervisors had the power to appropriate this fund, raised for the purpose of erecting a fire-proof clerk's and surrogate's office, to the erection of this addition to the penitentiary. I agree that boards of supervisors are bodies having no powers except such as are conferred by the legislature, and that they can exercise no other power than that prescribed by law, except such incidental powers as are necessary to the full and complete exercise of the power expressly conferred. And this is the rule prescribed by statute. (1 R. S. 364, § 2.) But in giving construction to such powers, it is always necessary to consider the nature of the power given to be exercised. The power to cause a tax to be levied, and to determine the object to which the money, when collected, shall be applied, is in its nature and character legislative power. This power, when exercised by a board of supervisors, is declared by resolution instead of enactment; but the resolutions of such bodies, when acting within the scope of their authority, have all the validity and force, as law, which pertain to enactments of the legislature. It is conceded by the defendant's counsel that this money was properly raised by the board for a legitimate object, but he denies that they have power to change the appropriation and devote the money to another object equally within the scope of their powers, and the accomplishment of which, in their judgment, the interests of the county, committed to their charge, more urgently demands. But I am of opinion that the power to raise a given sum of money for several specified objects, necessarily includes the power to designate the number to which it shall be applied, and the amount which shall be devoted to each object. The power to enact a law, by necessary implication, carries with it the power to refuse to enact and to amend, modify and repeal enactments when made, unless some special limitation is annexed to the power, granted. No question of vested rights

intervenes here, and I can see nothing to prevent the board of supervisors reconsidering the resolution to build a clerk's and surrogate's office, and rescinding it, if, in their judgment, the public interests require it. Indeed it was scarcely denied by the defendant's counsel, upon the argument, that the board had power to determine not to erect the clerk's and surrogate's office, notwithstanding the money had been raised and paid into the treasury for that purpose. But it was insisted that when the object to which it should be devoted had been once designated, the power of the board was spent, and a new appropriation could not be made, even if the object first designated had been rightfully abandoned. But this, it seems to me, would be construing the power conferred upon these county legislatures altogether too strictly, and to the manifest detriment of the interests of the county. The very nature of the power conferred implies a reasonable discretion in its exercise, within the limits prescribed.

When the present board discharged the committee appointed by the former board to contract for and superintend the erection of the clerk's and surrogate's office, they necessarily and designedly abandoned the erection of such building. The money which had been raised and paid into the treasury for that purpose, then remained in the treasury unappropriated. It was the money of the county, and could only be applied to some legitimate county purpose within the province and control of the board of supervisors. To hold that the board of supervisors could not, when thus situated, appropriate the fund to some purpose for which they could borrow money and burthen the county with taxation, would operate to deprive the corporate property of the county of guardian or owner. The powers of a county, as a body politic, can only be exercised by the board of supervisors thereof. And power is expressly given to them to make such orders concerning the corporate property of the county as they may deem expedient. (1 R. S. 366, § 4, sub. 1.) There is abundant authority to justify the board in ordering this money, remaining thus in

the treasury unappropriated, to be applied to the erection of this addition to the penitentiary which they had the power and had determined to erect. The resolution of the board appropriates a sum not exceeding $12,000 out of the $23,500 in the treasury raised for the purpose of erecting the clerk's and surrogate's office, leaving $11,500 still in the treasury to be applied to the erection of the clerk's and surrogate's office, should the board of supervisors hereafter determine to proceed with the erection thereof. But even had the board done nothing in the way of abandoning the project of erecting a clerk's and surrogate's office, there is no valid reason, that I can perceive, why they might not use a portion of the funds raised for that purpose in repairing and erecting other county buildings.

It will scarcely be pretended that the board are unalterably bound to expend all the money raised for the erection of the clerk's and surrogate's office, because it was raised for that purpose, especially if the interests of the county should only require the expenditure of a less sum in such erection. And yet the argument must go to this length to maintain the position that when an appropriation is once made the power of the board is spent, and they are without power to make any change. It is obvious that if they can modify or change at all, they may make any change they may deem beneficial to the county, within the scope of the general power. The power to divert and appropriate a part or the whole of a sum of money, raised for the purpose of erecting one county building, to the repair, improvement or erection of another county building, for which the same money might have been borrowed, and its payment provided for by tax, is clearly, in my judgment, an incident to the general power to borrow and expend the money for both objects, and to cause a tax to be levied to repay the money thus borrowed, with interest. It is certainly within the scope of the general power, and wholly, as it seems to me, within the discretion necessarily incident to any beneficial use or exercise of the power thus conferred.

Indeed it would be a manifest abuse of power, by the board of supervisors, to resort to borrowing and taxation, to raise funds for the erection of this addition to a county building, when the county had unemployed funds in the hands of the treasurer, raised for the same general objects. I am of opinion, therefore, that the resolution appropriating the $12,000 to the erection of this addition is a valid and binding resolution, and that all moneys paid by the treasurer in pursuance of it will be paid in pursuance of law. It follows that a mandamus must be allowed, payment having been refused by the defendant.

[MONROE GENERAL TERM, December 6, 1858. *Welles, Smith* and *Johnson,* Justices.]