## FRENCH v. FOLEY.

*(District Court, S. D. New York.* April 4, 1882 )

1. PENAL STATUTES—CONSTRUCTION—PENALTIES.

A penalty is not to be imposed for acts not within the fair meaning and construction of the penal statute as it stands, its scope is not to be enlarged by the addition of other words which would be essential in order to warrant the extended construction claimed for it.

2. SAME—PENALTY FOR FALSE PATENT MARKING—REV. ST. § 4901.

Subdivision 2 of section 4901 of the Revised Statutes, which imposes a penalty of $100 for affixing the word " patent," etc., to any patented article, with intent to imitate or counterfeit the mark or device of "the patentee," means the mark or device of the patentee of the patented article on which the words are so stamped.  The language and fair construction of this subdivision do not include the case of a patented article stamped with the mark of a person who has

no patent embracing or affecting the article stamped, but only a patent for a different article, and no penalty can be recovered therefor; the remedy of the person whose mark is improperly used must be sought independent of this section. The statute cannot be extended by inserting, in effect, after the words "the patentee," the additional words "of the same or *any other similar* article."

3. SAME—ACTION FOR THE PENALTY—PROVINCE OF JURY.

In an action for a penalty for affixing, without authority, the patentee's mark upon a stylographic pen, it appearing that the pen was stamped with the mark of two different patents, obtained by different patentees, and there being evidence tending to show that the defendant had authority for affixing the the mark of one of them, but not of the other, *held*, that it was necessarily a question for the jury to determine whether the pen so marked involved in its construction any part of the claim set out in the patent of the non-consenting patentee; and, if not, that the defendant was not liable to a penalty under subdivision 2 of this section. *Held*, further, that as the pen upon which the mark was affixed was embraced in one of the patents, no penalty could be recovered under subdivision 3, as that is limited to the stamping of *unpatented* articles.

The verdict of a jury, involving questions of "intent," upon circumstantial and conflicting evidence, should not be disturbed.

Motion for a new trial after verdict in an action for a penalty for counterfeiting plaintiff's patent mark.

*George C. Holt*, for plaintiff.

*Amos Brodnax*, for defendant.

BROWN, D. J. This action was brought to recover the sum of $4,500, penalties, under section 4901 of the Revised Statutes, for affixing on 45 stylographic pens the stamp, "Pat. Mar. 21, '76, Aug. 12, '79," without the consent of the patentees of the patents of those dates. The plaintiff avers that the Mackinnon Pen Company was the owner of the first of said patents, and was the exclusive licensee of the second, which had been issued to Charles H. Downes.

The answer denies that the defendant affixed such marks to the pens as alleged, or caused them to be manufactured with intent to imitate or counterfeit any mark or device of the patentee's patents.

On a trial before a jury the two patents were introduced in evidence; the earlier one known as the Mackinnon patent, and the later one known as the Downes patent. The pens in question were all manufactured by Clarke, a manufacturer employed by the Mackinnon Pen Company to manufacture in their behalf. Downes had executed to the Mackinnon company the exclusive right to *sell* his pen, and had authorized Clarke to manufacture them, for which he was paid a dollar a dozen. Clarke had manufactured more than the Mackinnon company were willing to receive and pay for, and all the pens so manufactured had been stamped by him, by the authority of both patentees, upon a narrow band near the top of the pen, with

the words " Pat. Mar. 21, '76, Aug. 12, '79," in type so fine as not to be distinguishable by ordinary eye-sight, without the aid of a magnifying glass. Clarke thereupon entered into negotiations with the defendant, Foley, for the sale to him of some of these pens, which Foley purchased, with this mark of both patents already stamped upon them, and he subsequently ordered a further supply. The defendant testified that he never ordered this stamp to be put upon any of the pens, and cared nothing about it; and Clarke, the manufacturer, also testified that the defendant never requested the stamp to be placed upon them ; that many of the pens were thus stamped before the sale to Foley, and he was uncertain whether all the pens which he sold to Foley which had this stamp upon them were not also thus stamped before the negotiations for the sale of any pens were made.

The second subdivision of section 4901, upon which the plaintiff relied, imposes a penalty of $100 for each offence upon every person "who, in any manner, marks upon or affixes to *any such patented article* the word 'patent' or 'patentee,' or the word 'letters-patent,' or any word of like import, with *intent* to imitate or counterfeit the mark or device of *the patentee*, without having the license or consent of such patentee, or his assigns or legal representatives." The offence for which the penalty is here imposed, consists in affixing upon "any such patented article the words 'patent,'" etc., "with intent to imitate or counterfeit the mark or device of *the patentee*." This necessarily means the mark of the patentee of the article patented. The court accordingly ruled throughout the trial that to entitle plaintiff to recover it must appear that the offending pen was made upon either the Mackinnon or the Downes patent, or upon both of them, and that Foley caused or procured the stamp in question to be affixed thereon without the consent of the patentees of those patents.

Downes testified to his assent to the stamp so far as respected his patent. It became important, therefore, to ascertain whether the offending pen involved any part of the claim covered by the prior Mackinnon patent. This was denied by the defendant, but asserted by the plaintiff. The court permitted the defendant to introduce testimony tending to show that this pen did not involve the Mackinnon patent, but that it was made upon the Downes patent exclusively; and, with the view of determining this question, the testimony of various witnesses was given, and the claims set forth in each patent were submitted and

argued to the jury. The plaintiff excepted to the admission of this testimony, and moved for a new trial upon this and other grounds.

In support of this exception the plaintiff contends that the words "such patented article," in the second subdivision of section 4901, above quoted, mean an article of the general description with that patented, and that the article upon which a patentee's mark is affixed without his license, in order to subject a person to the statutory penalty, need not be an article within or covered by such patentee's patent, but only some article similar to it in appearance or resembling it. I cannot thus read this subdivision; and I think its language is incapable, by any fair construction, of such an extension of meaning. The words "with intent to imitate or counterfeit the mark or device of *the patentee*" can only refer to the patentee of the article patented by such patentee. Hence it follows that if, upon a patented article, a stamp is put, not of the patentee of that article, but of some other patentee, who never patented the article so stamped, and never claimed it as his, such a case is not within this subdivision. It is a case omitted, so far as these penalties are concerned; and the remedy of the person whose name or mark is thus improperly used is confined to such as exists independent of this section.

The plaintiff contends that this subdivision should be read as though after the words "the patentee" there were inserted the words "of the same or any other similar article;" and as thus amended this subdivision would impose a penalty upon any one who "affixes to any such patented article the word 'patent,' etc., with intent to imitate or counterfeit the mark or device of the patentee" *of the same or any other similar article*. This would be a very manifest enlargement of the ordinary and plain meaning and interpretation of this subdivision, and would violate, in my judgement, the rule which has been invariably applied to the construction of penal statutes.

This statute is a highly penal one. In this case, the sum of $4,500 is claimed for affixing the stamp in question upon articles whose retail price is less than $100.

In *U. S.* v. *Wiltberger*, 5 Wheat. 76, it is said by *Marshall*, C. J., (page 95,) that—

"The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in this legislative, not in the judicial, department.   *   *   *

The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction."

In *U. S.* v. *Morris,* 14 Pet. 464, *Taney,* C. J., says, p. 475 :

" In expounding a penal statute the court certainly will not extend it beyond the plain meaning of its words; for it has been long and well settled that such statutes must be construed strictly. Yet the evident intention of the legislature ought not to be defeated by a forced and overstrict construction."

In *U. S.* v. *Hartwell,* 6 Wall. 385, *Swayne,* J., in commenting on this rule, says, (p. 396 :)

" The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular, instead of the more narrow technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

I know of no rule in the construction of criminal or penal statutes, or of any instance, going further in support of what may be supposed to be the general intent of the legislature, than that indicated in the language of *Swayne,* J., above quoted. In all cases the language used must be at least capable of the extended construction claimed for it, without the addition of other words which are absolutely essential in order to warrant the extended meaning. The language of subdivision 2 of section 4901 cannot by itself be thus read. There is no uncertainty or ambiguity in its terms, nor any differences of meaning dependent upon a technical or popular construction of the words used in it. "The patentee" referred to can be none other than the patentee of "such patented article;" so that not only its plain and natural meaning, but the necessary meaning of the language of the statute, is restricted to the article claimed in the patent of the patentee whose mark is counterfeited. *U. S.* v. *Taylor,* 3 Fed. Rep. 563, 565; *Lewis* v. *Hitchcock,* 10 Fed. Rep. 4, 5. So far, therefore, as related to affixing the stamp of the Mackinnon patent, it was competent to the defendant to show that the pens in question did not involve the use of anything claimed by that patent.

It is also urged that the court erred in declining to submit to the jury whether Foley was not liable under the third subdivision of section 4901. That subdivision refers solely to the word "patent," or

any word importing that an article is patented, being affixed to "any unpatented article." But the pen in question was without dispute a patented article. The testimony upon both sides showed that it was covered by either the Mackinnon patent or the Downes patent, or by both. It would have been manifest error in the court to submit to the jury any question under this subdivision which had no warrant in any testimony in the case.

It was also urged that the court erred in admitting the testimony showing that Clarke was, at one time, an officer of the Mackinnon Pen Company. But one of the important questions in the case was whether Foley affixed the mark complained of upon the pen, or caused it to be so affixed, and, if so, his intent in doing so. There was no proof that Foley affixed this stamp by any direct act of his own, and it was uncontradicted that it was affixed by Clarke, the manufacturer of the pen. Any evidence, therefore, showing the relation of Clarke to the Mackinnon Company in connection with the manufacture of these pens could not be properly excluded. Any testimony on this subject had a necessary bearing on the question as to whose act the affixing of the stamp was, and the intent with which it was done. If affixed before the negotiations between Clarke and Foley, its bearing upon the intent of Foley was manifest. If the effect or bearing of this testimony needed qualification, it was competent to the plaintiff to ask suitable instructions for that purpose; but there are no exceptions to the charge to the jury in this respect.

Upon the merits of the controversy, as to whether these pens were purchased by Foley as already manufactured and stamped by Clarke previously, or whether ordered by Foley and thereafter manufactured by Clarke on his order; and, if the latter, whether in so ordering them there was any express or implied request that Clarke should affix the stamp in question, so that the affixing became, under such circumstances, the act of Foley,—the case was left with the jury upon all the evidence under instructions to which no exception has been taken.

Cases of this kind, in which the intent is a material fact to be determined upon evidence more or less conflicting, and under circumstances calculated to arouse more or less suspicion of the want of good faith, are peculiarly cases in which the court, upon established principles, is not warranted in interfering with the verdict of a jury. It cannot be said that there was no evidence, by itself considered, sufficient to acquit the defendant. So far as the direct testimony of the defendant and Clarke would go, the evidence was in the defendant's favor.

The strength of the plaintiff's case lay in the suspicious nature of the circumstances, and in the presumed business advantages to be gained by the defendant from his negotiations with Clarke. The comparative weight and value of the evidence on this point on both sides were necessarily for the jury alone to determine under proper instructions. Not perceiving any error in these instructions, or any substantial error in the admission or rejection of testimony, the verdict cannot be interfered with, (*Walker* v. *Hauxhurst*, 5 Blatchf. 494,) and the motion for a new trial should therefore be denied.