Fahnestock v. The State.

Judgment affirmed, with costs.

Filed May 13, 1885; petition for a rehearing overruled June 18, 1885.

———————◆———————

No. 12,126.

## FAHNESTOCK v. THE STATE.

CRIMINAL LAW.—"*Pimp.*"—*Indictment.*—*Duplicity.*—An indictment under section 2002, R. S. 1881, charged that one F., on, etc., did unlawfully frequent houses of ill fame, well knowing them to be such, and did unlawfully frequent houses of assignation, well knowing them to be such, and did unlawfully associate with females known and reputed as prostitutes, viz., with one K. and others whose names are to the grand jury unknown, well knowing them to be such, and was then and there engaged in and about a house of prostitution, he, the said F., then and there being a male person, contrary, etc. On motion to quash, *Held,* that the indictment is not bad for duplicity.

SAME.—*House of Prostitution.*—*Question of Fact.*—In a prosecution under such an indictment, the question as to whether or not the house, which the defendant is alleged to have unlawfully frequented, and in and about which he was engaged, was a house of ill fame, assignation or prostitution, in so far as it is of importance in such case, is a question of fact for the jury, to be determined from the evidence.

SAME.—*Instruction to Jury.*—*Prostitute.*—*Statute.*—In such case an instruction to the jury, that "A female prostitute is a woman who has or holds unlawful sexual intercourse with men; and any act of voluntary sexual intercourse, between an unmarried female and a male person, is whoredom; and a single act of that kind makes a woman a whore or prostitute, these two terms meaning the same thing. And the association of a male person, not her husband, with such a woman, constitutes him a pimp," is erroneous, for the reason that section 2003, R. S. 1881, defines the meaning of the term "prostitute," and the definition given in such instruction is not in harmony with that given in said section.

STATUTE.—*Definition of Words.*—Where a statute defines words or terms used therein, no wider or different meaning can be given them by any rule of legal construction.

From the Randolph Circuit Court.

*E. L. Watson, J. S. Engle, W. A. Thompson* and *J. W. Thompson,* for appellant.

*F. T. Hord,* Attorney General, and *W. B. Hord,* for the State.

HOWK, J.—The first error of which the appellant complains in this case is the overruling of his motion to quash the indictment.

It was charged in the indictment, that James Fahnestock, late of Randolph county, Indiana, "on the 1st day of September, 1884, at said county and State aforesaid, did then and there unlawfully frequent houses of ill fame, well knowing them to be such, and did then and there unlawfully frequent houses of assignation, well knowing them to be such, and did then and there unlawfully associate with females known and reputed as prostitutes, to wit, with one Hattie Knecht and others whose names are to the grand jury unknown, well knowing them to be such, and was then and there unlawfully engaged in and about a house of prostitution, the said James Fahnestock then and there being a male person, contrary to the form of the statute," etc.

The only objection urged to the indictment by appellant's counsel is that it is bad for duplicity. It is manifest upon the face of the indictment that it was intended to charge the appellant therein with the offence against public morals of being a pimp. This offence is defined, and its punishment prescribed, in section 2002, R. S. 1881, which reads as follows: "Whoever, being a male person, frequents houses of ill fame or of assignation, or associates with females known or reputed as prostitutes, or frequents gambling houses with prostitutes, or is engaged in or about a house of prostitution, is a pimp, and, upon conviction thereof, shall be fined in any sum not

more than one hundred dollars nor less than ten dollars, and
imprisoned in the county jail not more than sixty days nor
less than ten days."

It is claimed on behalf of the appellant that the indictment
against him in this case, the substance of which we have
quoted, is bad for duplicity, because it charges him in a single
count with having committed on the same day and at the
same place four separate acts, either one of which acts, if sus-
tained by the evidence, would have been sufficient to show
that, under the statute, he was guilty of the offence against
public morals of being a " pimp." ' If the indictment had
charged him with the commission of only one of these acts,
it would have charged him with the offence of being a pimp,
and nothing less; and when it charged him, as it did, with
the commission of the four acts at the same time and place,
it charged him only with the single offence of being a pimp,
and nothing more. It can not be held that an indictment,
which charges the defendant with only one offence as the same
is defined in the statute, is bad for duplicity, merely because
it charges him with the commission of several distinct acts at
the same time and place, either one of which acts would be
sufficient alone to constitute a proper charge of such offence.
Where a statute, like section 2002, above quoted, makes it an
offence to do this, or that, or another thing, mentioning sev-
eral things disjunctively, either one of which would consti-
tute one and the same offence, subject to one and the same
punishment, it is the general rule that all the things mentioned
in the statute may be charged conjunctively in a single count,
as constituting but a single offence. In such a case the in-
dictment is not open to the charge of duplicity, because there
can be but one conviction and one punishment for one of-
fence. State v. Bielby, 21 Wis. 206 ; Clifford v. State, 29
Wis. 327.

This general rule in criminal pleading was recently ap-
proved and acted upon by this court in the well considered
case of Davis v. State, 100 Ind. 154. Applying this rule to

the case in hand, we have no difficulty in reaching the con-clusion that the indictment against the appellant is not bad for duplicity, and that his motion to quash it was correctly overruled.

Under the alleged error of the court in overruling the appellant's motion for a new trial, it is claimed by his counsel that two important legal questions are presented for decision in this case, by the instructions given by the court and by the refusal of the court to give certain other instructions at his request. These two questions are thus stated by his counsel: "1. Under our statutes, what does it take to constitute a house a house of prostitution or ill fame?" and, "2. Under the same statutes, what does it take to constitute a woman a prostitute?"

In their discussion of the first of these two questions, the appellant's counsel earnestly insist that the trial court erred in its refusal to give the jury each and all of the following instructions, as requested by appellant, namely:

"1. If one woman live in and occupy a house, and no other woman or women live in or occupy said house with her, and the woman, who so occupies said house, occasionally or frequently, admits one man, the same man, to said house for the purpose of, and does have, illicit sexual intercourse with him, such acts and conduct would not make said house a house of prostitution or ill fame.

"2. If one woman live in and occupy a house, and no other woman or women live in or occupy said house with her, and the woman who so occupies or lives in said house alone, occasionally, or frequently, admits one and the same man, or many men, for the purpose of, and does have, illicit sexual intercourse with such man or men so admitted to said house, such acts and conduct do not constitute said house a house of prostitution or ill fame.

"4. A house of prostitution or ill fame is a house where prostitutes and lewd persons live, or where such prostitutes and lewd persons visit, and which is kept for the reception

of persons who choose to resort to it for the purpose of illicit sexual intercourse.

" 5. A house of prostitution or ill fame is a house or place where prostitutes and lewd persons resort, and which is kept for the reception of persons who choose to resort to it for the purpose of illicit sexual intercourse ; and if a house is kept by one woman, in order to make it a house of prostitution, it must be resorted to in common by other lewd women besides the keeper of the same.

" 7. The character of a house of ill fame or prostitution is determined by the character of the persons who resort to or visit and live therein; and in order to make said house of Hattie Knecht a house of ill fame or prostitution, it must have been shown by the State that prostitutes and lewd persons of both sexes resort to or live in said house."

In the same connection, the appellant's counsel further insist that the trial court erred in giving the jury, of its own motion, the following instruction :

" 5. If one woman who is a prostitute lives in and occupies a house, and admits to it frequently one and the same man, not her husband, for the purpose of, and such man and such woman do at such meetings have, illicit sexual intercourse, such conduct would make and constitute such house a house of assignation, or prostitution, or ill fame; those terms meaning one and the same thing."

The court committed no error, as it seems to us, in refusing to give the jury either of the above instructions requested by appellant. The question as to whether or not the house of Hattie Knecht was a house of ill-fame or of assignation, or a house of prostitution, in so far as it has any importance in this case, was a question of fact, rather than of law, to be determined by the jury from the evidence in the cause. It is not true, as matter of law, under the statute of this State, that a house may not be a house of ill fame, or of assignation, or of prostitution, unless it be shown to be occupied by more than one prostitute, or to be resorted to by other prosti-

Fahnestock *v.* The State.

tutes and more than one man, for the purposes of prostitution. Nor did the court materially err, we think, in giving the jury, of its own motion, instruction five last above quoted, although it may be open to criticism. It is true, perhaps, that where one prostitute alone lives in and occupies a house, but frequently admits thereto one man only, not her husband, for the purpose of illicit sexual intercourse, and they there have such sexual intercourse, such house may be in fact a house of ill fame, or of assignation, or of prostitution, within the meaning of the statute. But this is true, as it seems to us, as a fact rather than as matter of law. While we are not willing to reverse the judgment below, on account of error in the court's fifth instruction above quoted, we may properly say that it borders closely upon, if it does not invade, the province of the jury.

We pass to the consideration of the second question, which appellant's counsel claim is presented for decision in this case by an instruction given by the court of its own motion, and by its refusal to give the jury another instruction at appellant's request. The question is thus stated: Under the statutes of this State, what does it require to constitute a woman a prostitute? Upon this question, the court gave the jury the following instruction:

"A female prostitute is a woman who has or holds unlawful sexual intercourse with men; and any act of voluntary sexual intercourse, between an unmarried female and a male person, is whoredom; and a single act of that kind makes a woman a whore or prostitute, these two terms meaning the same thing. And the association of a male person, not her husband, with such a woman, constitutes him a pimp."

Upon the same question, the appellant requested and the court refused to give the following instruction:

"If one woman live in and occupy a house, and no other woman or women live in or occupy such house with her, and the woman, who so occupies such house, occasionally or fre-

quently admits one and the same man to such house for the purpose of, and does have, illicit sexual intercourse with such man, such acts and conduct would not make such woman a prostitute, unless such acts of illicit sexual intercourse were done for hire."

We are of opinion that the trial court clearly erred in instructing the jury, as it did, that a single act of voluntary sexual intercourse, between an unmarried woman and a male person, makes the woman a prostitute, within the meaning of the criminal laws of this State. In section 2003, R. S. 1881, in the statute of this State defining public offences, it is provided as follows: "Any female who frequents or lives in houses of ill fame, or associates with women of bad character for chastity, either in public or at a house which men of bad character frequent or visit; or who commits fornication for hire,—shall be deemed a prostitute," etc. This is the statutory definition of the term "prostitute"; and wherever the term is used in the criminal laws of this State, it must be held that it is used as here defined, unless the context clearly shows that the Legislature intend to give it a broader or different meaning. This definition immediately follows the section of the statute under which the appellant is indicted in this case; and it is fair to assume that the term "prostitute" is used in that section as it is defined in the next succeeding section. It is manifest that the court's charge, in relation to what will make a woman a prostitute, is entirely outside of the statutory definition of the term "prostitute."

In Osborn v. State, 52 Ind. 526, this court held, in effect, that the phrase "illicit sexual intercourse," and the word "prostitution," were not convertible terms. In that case Osborn was indicted under a section of the statute which made it a felony for any person to entice or take away any female, of previous chaste character, "for the purpose of prostitution." The indictment charged that Osborn enticed away a certain female, of previously chaste character, "for the purpose of having illicit sexual intercourse with her." He was tried and

convicted below, and upon appeal the question arose here whether the facts charged made a case within the statute, and it was held that they did not. The court cited with approval, and based its decision upon, the following authorities: *Commonwealth* v. *Cook*, 12 Met. (Mass.) 93; *Carpenter* v. *People*, 8 Barb. 603; *State* v. *Ruhl*, 8 Iowa, 447; *State* v. *Stoyell*, 54 Maine, 24. In each of the cases cited it is substantially held that the word "prostitution," as used in the criminal statutes of the several States, means common, indiscriminate, meretricious, illicit intercourse, and not sexual intercourse confined exclusively to one man. This meaning of the word "prostitution" is in harmony with the statutory definition of the word "prostitute," as given in section 2003, R. S. 1881, but it is in direct conflict with the meaning placed upon the latter word in the court's instruction above quoted.

We are aware that the court's instruction we are now considering is copied almost literally from the language of this court in *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339. The case cited was brought by a woman to recover damages for alleged slanderous words, spoken of and imputing to her a want of chastity. The court there said: "Any act of sexual intercourse between a married female and a male person not her husband, or between an unmarried female and a male person, is whoredom, and a single act of the kind, according to the case of *Alcorn* v. *Hooker*, 7 Blackf. 58, makes a woman a whore." Without approving or condemning the cases last cited, or the language last quoted, it will suffice for us to say that those cases were civil actions, wherein the plaintiffs sought to solace their wounded pride, and to repair their damaged reputations, by the recovery merely of money, and, further, that at the time those decisions were made, we had in this State no statutory definition of the words "whore" or "prostitute." The case in hand is a criminal prosecution, for an offence against public morals, wherein the defendant, if found guilty, may be subjected to a heavy fine and a degrading imprisonment. Of course, the language and terms of a criminal

statute must be rigidly and strictly construed; and, certainly, where the statute itself defines words or terms used therein, no wider or different meaning can .be given such words or terms by any rule of legal construction.

We conclude, therefore, as we began, our consideration of the second question propounded by appellant's counsel, in their argument of this cause, with the statement that in our opinion the court's instruction, last above quoted, is not the law of this State in criminal prosecutions such as the one at bar. This conclusion, however, does not involve an approval of the instruction requested by appellant on the same subject and last above quoted. It is not necessary to the decision of this cause, as now presented, that we should now determine the question, as to whether or not there was error in the court's refusal to give the instruction as requested; therefore we do not decide this question, and we deem it not improper for us to say that we neither approve nor condemn such instruction.

Other questions are presented and discussed by appellant's counsel in their able and exhaustive brief of this cause; but as the judgment below must be reversed and a new trial awarded for the error of the court already pointed out in its instruction last above quoted, we need not extend this opinion in the consideration and decision of such other questions; especially so as those questions may not arise again upon the new trial of this cause.

The judgment is reversed, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

Filed May 26, 1885.