### SALLIE RAMEY v. THE STATE.

No. 1385. Decided April 27, 1898.

#### 1. Disorderly House—What Constitutes.

Under Penal Code, article 359, a disorderly house can be kept, although it is shown that but one prostitute inhabited the house, if it be further shown that men resorted there for the purpose of prostitution, and that frequent acts of prostitution be there committed, and that the house has the reputation of a disorderly house.

#### 2. Same—Proof by Reputation.

On a trial for keeping a disorderly house, while proof of the reputation of the house is admissible, such proof of reputation alone is insufficient to establish the offense.

#### 3. Same—Evidence Insufficient.

On a trial for keeping a disorderly house, the evidence was insufficient to support a conviction which only showed that a woman of bad reputation for chastity occupied the house where men frequented, but that the house was a quiet and apparently nice place, and no act of illicit intercourse, or circumstances tending to establish such act, and no disorder was shown to have occurred therein.

APPEAL from the County Court of Bee. Tried below before Hon. FELIX J. HART, County Judge.

Appeal from a conviction for keeping a disorderly house; penalty, a fine of $200.

The opinion states the case.

*Hill & Dougherty,* for appellant.—The wording and construction of our statutes on disorderly houses: The first division of article 359, Willson's New Criminal Statutes, Penal Code, to wit: "A disorderly house is one kept for prostitution," and under which the State seems to have prosecuted appellant and seeks to sustain this conviction, does not to our minds apply to this case, where the keeper, if such defendant, be the sole occupant of the house. But it rather seems to have been intended to meet the evil of assignation houses. No other construction can be placed on the wording of the statute. Admitting, for the sake of argument, that defendant was a woman of unchaste habits, then we must perforce be compelled to recognize the difference between the keeper of a house of ill fame and a house kept by one whose fame is ill. The gist of this offense is the ill fame of the house, not of the defendant; otherwise must every erring female be compelled to wander houseless in the State of Texas, for her mere occupation of a house would infect it with her reputation and bring upon her unsuspecting head the penalty of the law, if the court sustains the proposition that a defendant who is sole occupant of a house, as in this case, can be convicted upon the mere reputation of the house. Further, the term to "keep a house," necessarily implies that there be inmates of such house; in other words, some one who is kept therein. Bishop, defining the term "to keep," says: "Keeping is constituted by such control over the house and its inmates as pertains to the head or heads of a household." 2 Bish. Crim. Proc., 118, quoted approvingly in Allen v. State, 15 Texas Crim. App., 320.

We cite the following authorities:

"A woman who lives by herself and is accustomed to receive men for illicit intercourse, is not, merely because she is unchaste, guilty of keeping a bawdy house."

"A single act of prostitution or habitual acts by one person does not constitute the house bawdy." See cases cited in 5 Am. and Eng. Enc. of Law, 695.

The living together of lewd women, doing acts of prostitution in their or in the house of one of them, does not constitute the offense of keeping a bawdy house. State v. Collay, 17 Am. Rep., 704; 1 Bish. Crim. Law, 1082.

To constitute a house of ill fame, it must be resorted to more than once. for the purpose of prostitution and lewdness by others than the proprietor, though it need not be used habitually or for any considerable length of time for such purpose. Any number of illicit acts with the proprietor will not make the place a house of ill fame. State v. Lee, 20 Am. Rep., 401; Weber v. State, 22 S. W. Rep., 920.

"A house may bear an ill name and yet there may be nothing against it which would justify the interference of the law." 10 Crim. Law Mag.,

521; Saunders v. People, 29 Mich., 269. As to reputation of house, see 10 Crim. Law Mag., 517; Smalley v. State, 11 Texas Crim. App., 147.

The State's testimony relied on to convict in this case is that the house had the reputation of a whorehouse. The facts, according to any reasonable definition of the term, show that it was not either a whorehouse or house of ill fame as defined in the cases cited, for the defendant was the sole and only occupant. The question then arises, can a defendant be convicted of keeping a house for the purpose of prostitution on the uncorroborated testimony that the reputation of the house in which she resides is that of a whorehouse? for solely on this is the action based. There is that variance when we consider her sole occupancy of the house, between the allegation that the house was kept for the purpose of prostitution and the proof that the reputation of the house was that of a whorehouse, that should reverse this case. That a house bears the reputation of a whorehouse is not proof that it bears the reputation of a house kept for the purpose of prostitution. Even conceding that the sole occupant of a house may be convicted of keeping a disorderly house, testimony that the house had the reputation of a whorehouse would not alone be sufficient to sustain the conviction, for testimony of the mere reputation of a house should not be permitted to preponderate over testimony as to what the house actually was. Since it was not a whorehouse, as shown by the facts and cases cited for definition, then testimony that it bore such reputation would not sustain a conviction. Conceding that the State's side of the case is correct, then the most that the house in question was, not a whorehouse, but a whore's house, and certainly there is no law in this State against the acquisition of property by women of ill fame. A conviction solely on the reputation of the house has been closely scrutinized in this State, and the opinions on the numerous cases in appellate courts, where such cases have been affirmed, have been based on sufficient direct testimony to support a conviction; but no case in this State has ever held that the sole occupancy of a house by a defendant, which bore the reputation of a house of ill fame, was sufficient to sustain a charge of keeping a disorderly house.

*W. W. Walling* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of keeping a disorderly house, and her punishment assessed at a fine of $200; hence this appeal.

The proof showed that the appellant was the owner of the house in question, and that she was the only inmate of said house. Appellant asked certain charges, which were refused by the court; and this raises the question whether or not, under such state of case, a person can be guilty of keeping a disorderly house. The clause of the statute under which this prosecution was brought is as follows: "A disorderly house is one kept for prostitution." Penal Code, art. 359. The general definition of a pros-

titute "is a female given to indiscriminate lewdness for gain." See 19 Am. and Eng. Enc. of Law, p. 291. In Springer v. State, 16 Texas Criminal Appeals, 591, Judge Wilson draws a distinction between a common prostitute and a prostitute. He says: "A woman may be a prostitute, and yet have illicit connection with one man only; but, to be a common prostitute, her lewdness must be more general and indiscriminate." In North Carolina it is held "that an indictment for keeping a bawdy house can not be sustained, where the proof merely shows that the owner of the house was unchaste, lived by herself, and habitually admits one or many men to an illicit cohabitation with her." See State v. Evans, 27 N. C., 603. In other States, however, it is held differently, it being held "that the fact of keeping a house to which men resort for the purpose of prostitution, and that frequent acts of prostitution are there committed, and that the house has that reputation, is sufficient to constitute the keeping of a house of ill fame, though it is not shown that any woman other than the defendant engaged in prostitution in the house. See 2 McClain Crim. Law, sec. 1138, citing People v. Mallette, 79 Mich., 600, 44 N. W. Rep., 962; Fahnestock v. State, 102 Ind., 156, 1 N. E. Rep., 372.

We hold that, under our statute, a disorderly house can be kept, although it is shown that but one prostitute inhabited said house, where the other essential elements of the offense are proved. The proof showed that appellant was the owner of the house. The State also offered proof that it was known as a house of ill fame. It was also shown that men went there in the daytime; but by the State's own testimony it is shown that the house was a quiet and apparently nice place; that nothing wrong was known to have occurred there. The men shown to have gone in there were not known to the witness, and appeared to be strangers. No disorder is shown to have occurred at the house, and no act of illicit intercourse or circumstance tending to show such illicit intercourse, further than has been stated, was shown. In addition to this, it was proved by one witness that appellant had a bad reputation for chastity. We know of no case that goes to the extent of holding that the offense of keeping a disorderly house can be sustained on bare proof of reputation. Such proof is admissible, both to show the character of the house and the character of the inmates; and this, with slight additional circumstances, might be sufficient to sustain a verdict of conviction. See Sylvester v. State, 42 Texas, 496. We do not think, however, that there are circumstances in this case, in connection with the evidence of reputation, sufficient to sustain this conviction. It is not necessary to discuss other matters. The judgment is reversed and the cause remanded.

*Reversed and remanded.*