W. S. MANKER *et al., as Partners, etc.,* v. L. M. TOUGH.

No. 15,584. (98 Pac. 792.)

SYLLABUS BY THE COURT.

1. SALES—*Authority of Agent.* An agent employed to sell real estate, and not authorized to execute a contract of sale or to execute an instrument of conveyance, is only an agent to find a buyer.

2. —— *Contract between Principal and Agent—Joint Venture.* A contract between a real-estate agent and a landowner that if the agent find a purchaser for the land he shall have as compensation for his services the amount the land sells for above a certain price is an agency contract, and not a joint adventure.

3. CONTRACTS—*Legality—License-tax.* Where, under the statute which authorizes cities of the third class to impose a license-tax upon "real-estate agents," the council of such a city enacts an ordinance imposing a license-tax upon the business of "real estate," and a real-estate agent thereafter continues to conduct his business within such city without a license and in such business makes a contract to find a buyer of real estate for a compensation, such ordinance does not render the contract illegal and void.

4. STATUTORY CONSTRUCTION — *Penal Ordinance — Legality of Contract.* In a civil action to which the city is not a party, where a breach of such ordinance is invoked for the purpose of avoiding a contract between the parties, the ordinance will be strictly construed.

5. PRACTICE, DISTRICT COURT—*New Trial.* The allowance or denial of a motion for a new trial, filed after a general verdict in a district court, is largely a matter of judicial discretion as to the findings of fact and the weight of evidence involved in the verdict; but alleged errors of law occurring upon the trial are not matters of discretion, and are fully subject to review in this court.

Error from Scott district court; CHARLES E. LOBDELL, judge. Opinion filed December 12, 1908. Reversed.

STATEMENT.

THE defendant in error employed the plaintiffs in error, a firm of real-estate agents, to sell a large tract of land for him, and contracted to pay them for their

services the amount for which the land was sold in excess of $6 per acre. The contract of employment was oral. The plaintiffs in error found a purchaser and brought the purchaser and the seller together, and they entered into a written contract, duly executed, by the terms of which the defendant in error agreed to sell and convey by warranty deed 2880 acres of land, by quitclaim deed 320 acres, and by relinquishment 160 acres, aggregating 3360 acres, for which the purchaser agreed to pay $23,520, $5000 to be paid in cash, $3000 of which was paid at the time of the execution of the contract. Promissory notes, payable at specified times and all bearing interest and secured by a mortgage on the land, were to be given for the remainder of the purchase-price. A definite date for the consummation of the transaction was also included in the contract.

Afterward, by the mutual agreement of the purchaser and the seller, but without the consent or concurrence of the plaintiffs in error, the contract was canceled and the $3000 which had been paid thereon was returned by the seller to the purchaser. Thereafter the plaintiffs in error brought this action to recover from the seller the sum of $3360, being equivalent to one dollar per acre, as compensation for their services.

The making of the contract between the plaintiffs and the defendant is virtually admitted by the pleadings. The plaintiffs allege that the defendant agreed to pay them for their services the amount for which the sale should be made in excess of $6 per acre, provided they found a purchaser who was able and willing to buy the land. The answer, however, alleges that the defendant agreed, if the plaintiffs should find a purchaser for the lands and should close up and complete a sale thereof, to allow them as compensation for their services any amount they obtained therefor above $6 per acre. The case was tried in the district court of Scott county, to a jury, and a verdict was returned in favor of the plaintiffs for the full amount claimed. A

motion for a new trial was filed by the defendant and was allowed by the court. To reverse this order the plaintiffs bring the case here.

*David Ritchie,* and *Ed R. Bane,* for plaintiffs in error.

*J. S. Simmons,* and *R. D. Armstrong,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The jury were properly instructed as to the burden of proof in the case, and it is not contended by the defendant that there was not some evidence to support every material issue of fact. The court allowed the motion for a new trial only upon the ground of errors of law occurring at the trial, as will hereinafter more fully appear. It follows that the court, approved the verdict of the jury as to the facts involved, and we shall therefore regard it as a fact that the contract was as alleged by the plaintiffs. Indeed, where one employs another to sell land for him, and does not confer authority to execute a contract of sale or to execute an instrument of conveyance, the contract necessarily is that the agent shall find a purchaser ready, willing and able to make the purchase at the price and on the terms prescribed by the seller to the agent. The court on allowing the motion for a new trial filed a statement of his reasons for making the order, which is made a part of the record. They are as follow:

"(1) I conclude as a matter of law that in a contract such as the one in question, where agents' compensation was to be such sum as might be derived from the sale above a fixed price, that the relation of principal and agent is not created, and does not exist, and that the transaction partakes of the nature of a joint venture, in which neither one may profit to the exclusion of the other, unless the sale shall fail by reason of the fault or neglect of the owner.

"(2) I conclude that the contract entered into between Tough and Sample was non-enforceable, for the

Manker v. Tough.

reason that the contract provided for a relinquishment on the part of Tough of a homestead entry upon government land, and for a mortgage on the part of Sample on such land after he should have acquired homestead interest therein, neither one of which provisions could be enforced specifically, and the latter of which is especially contrary to law.

"(3) I conclude that the term 'real estate,' as used in ordinance number 67 to define a business, includes within itself the usual and reasonable acceptation 'real-estate agents,' and that, while such term may include other business than real-estate agents, the fact that the ordinance goes beyond statutory authority will not vitiate it in so far as the ordinance is within the scope of granted authority, and that such ordinance was sufficient to impose a license-tax upon persons engaged as real-estate agents within the limits of Scott City, and that the plaintiffs, by their failure to obey such license, are not in a position to recover in this action.

"(4) I am of the opinion that the willingness of Sample to buy the land in question is immaterial, beyond the fact that he signed the contract upon which plaintiffs rely; but if it should be for any reason held otherwise then substantial error was committed against the defendant in the progress of the trial by excluding the deposition of Kelly.

"(5) From which conclusions it must follow as a matter of course that I believe the verdict to be contrary to law, and that it must be set aside and a new trial granted.

"(6) That the new trial was granted upon the grounds stated in the above and foregoing statement, and none other."

The contract, as pleaded by the plaintiffs, which the general verdict determines to be the true contract, is, we think, a contract of agency and not a joint venture, and, except as to the basis of payment, is not unusual. It does not differ materially from the usual contract with real-estate agents to sell land. We can not therefore concur with the court in the first reason for granting a new trial.

Nor can we concur in the second reason assigned by the court. Whether the contract between the seller

and the purchaser was enforceable or not is not material to this case. The seller was able to make just such a conveyance to the purchaser as in their written agreement he agreed to make. The purchaser in return was able to make just such a mortgage as he agreed to make and the seller agreed to accept. Indeed, it appears from the evidence produced by defendant that, at the time the contract was abrogated by mutual consent, the seller had prepared the deeds of conveyance and the purchaser had prepared his notes and mortgage. The only apparent obstacle to the closing of the deal is that the purchaser had changed his mind, and to avoid proceeding preferred to lose, if necessary, the $3000 paid. Also, there appears to have been no contention that he was not financially responsible.

As to the fourth ground for allowing the motion, we agree with the court as to the immateriality of the deposition (other than the portion thereof admitted in evidence) of the witness, Kelly, but this does not furnish a reason for granting a new trial.

There remains, then, only to consider the meaning of the term "real estate," as used in ordinance No. 67 of Scott City and applied to this action. The court admitted the ordinance in evidence, and afterward withdrew it from the consideration of the jury. In the third conclusion the court indicates that the latter action was erroneous. Scott City is a city of the third class, and section 1127 of the General Statutes of 1901 provides: "The city council shall have authority to levy and collect a license-tax on . . . real-estate agents."

Section 1 of ordinance No. 67 of Scott City reads:

"That on and after the first day of September, 1901, it shall be unlawful for any person or persons, corporation or corporations, to engage in any of the branches of business or industry, within the corporate limits of the city of Scott City, Kan., set forth in this ordinance, without first having obtained a license therefor, signed by the mayor and countersigned by the clerk of said Scott City, Kan., and sealed with the city seal."

Section 3, so far as it relates to this action, reads:

"That the license-tax on the following professions and businesses shall be the following amount:   .   .   . Real estate, $4 for first member and $2 for each additional member of firm per year."

Section 5 reads:

"Any person violating the provisions of this ordinance shall be deemed guilty of a misdemeanor, and, upon conviction thereof before the police judge, shall be fined in a sum not less than five dollars, nor more than fifty dollars."

It is admitted by the plaintiffs that they were real-estate agents doing business in Scott City, that the contract in question was made therein, and that they had not paid a license-fee or secured a license for such business.    Also, that if the ordinance, strictly construed, applied to their business and required of them the payment of the license-fee, they can not recover in this action, and that the order of the court in granting a new trial by reason of the exclusion of such ordinance from the consideration of the jury is right.    They contend, however, that the statute only authorized the city to impose a license-tax upon "real-estate agents," and that the city council had not acted upon that grant of authority, but had assumed to impose a license-tax upon the business of "real estate."    They further contend that the ordinance is penal in its nature, and must be strictly construed.

The defendant, on the other hand, contends that the intention of the council is apparent, and was to tax the business of real-estate agents; that the business of real-estate agents is commonly designated as the business of "real estate" or the "real-estate business."

If the ordinance in question imposed a license-tax upon real-estate agents it would be within the express statutory grant of power, and this case would involve the identical question decided in *Yount v. Denning*, 52 Kan. 629, 35 Pac. 207.    In that case the ordinance imposed a license-tax upon the business of "real-estate

agents," and also, in substance, provided that no person or firm should conduct or carry on such business within the city of Winfield without first having obtained a license so to do and having paid the license-tax. That ordinance also, as the one in this case, prescribed a fine for a violation of its provisions. It was held therein that a firm of real-estate agents who, without obtaining the license, had contracted in the city of Winfield to sell a tract of real estate for a certain commission, and had performed their part of the contract, could not maintain an action to recover the stipulated compensation for their services, for the reason that the contract was made in violation of law. Also, that any remedy upon a contract made in violation of a city ordinance is denied for the benefit of the city in the collection of its revenues. The above case was decided in January, 1894. In different forms it was twice afterward in. this court, and it has been cited with apparent approval several times in this and other courts of last resort. (*Denning v. Yount,* 62 Kan. 217, 61 Pac. 803, 50 L. R. A.. 103; *Denning v. Yount,* 9 Kan. App. 708; *Mayes v. Live Stock Ass'n,* 58 Kan. 712, 51 Pac. 215; *Mayer v. Hartman,* 77 Kan. 788, 90 Pac. 807.) The decision is *stare decisis* upon the facts involved. Moreover, it must be said to be in accord with the long-recognized principle that no action can be maintained to enforce a contract made in violation of law. This statement of the law is an enlargement of the original doctrine that a contract to do an act which would be a crime or misdemeanor under the common law or against public policy or a trespass upon the private rights of a third person is void.

Courts differ widely as to whether the power granted by statute to a city to impose a license-tax upon an occupation or business includes, in the absence of any intimation of authority so to do, the power to prohibit the prosecution of the occupation or business unless a prescribed license-tax be first paid. But the decisions

of this court, *supra,* at least assume that the power to prohibit is embodied in the power to impose the license-tax. Still, questions will continue to recur. Why should one party to a contract be allowed to avoid the payment of debts he has contracted to pay, and thus gain an unconscionable advantage, because the other party deliberately, or through inability or mere oversight, has failed to discharge an obligation to the city, when there is available to the city both a civil remedy for the wrong and a penal remedy against the wrong-doer? Was it any benefit to the city in *Yount v. Denning, supra,* that one party was relieved from paying the other an agreed compensation for services actually rendered, or in *Mayer v. Hartman, supra,* that one party was enabled to cheat his neighbor out of coal worth nearly $1000? Is not the penalty entirely disproportionate to the offense—especially as, when it has been suffered, neither the civil nor the penal action by the city has been abated? In the present state of the law, if these questions are not to continue to arise it devolves upon the legislature to modify the law. As the law has been construed for a long time, by this and most other courts of last resort, it appears to furnish an inducement to evil-disposed persons to watch for opportunities to contract with any one upon whom a license-tax has been imposed at a time when, for perhaps only a day, he has neglected to pay his tax, and thus acquire merchandise or service without payment therefor.

The denial of a remedy upon the illegal contract is, in effect, tantamount to a penalty or fine in the amount the party by the terms of the contract is entitled to recover. By constitutional provision the "proceeds of fines for any breach of the penal laws shall be exclusively applied in the several counties in which the . . . . fines [are] collected, to the support of common schools." (Art. 6, § 6.) And "an act of the legislature giving to an informer who has sustained no loss one-

half of such proceeds is unconstitutional and void."
(*A. T. & S. F. Rld. Co. v. The State,* 22 Kan. 1, sylla-
bus.) The rule, then, that allows one party to a civil
action to penalize for his own benefit the other party
for an act which occasioned him no loss would seem to
be exotic to the jurisprudence of this state, but to have
been engrafted thereon.

As to whether a penal ordinance should be strictly
or liberally construed, there is some diversity of opinion
in other courts. (*A. W. Meriam v. City of New Orleans,*
14 La. Ann. 318; *Zorger v. The City of Greensburgh,*
60 Ind. 1; *State v. Carpenter,* 60 Conn. 97, 22 Atl. 497.
See, also, *United States v. Harris,* 177 U. S. 305, 20
Sup. Ct. 609; *Sarlls v. United States,* 152 U. S. 570, 14
Sup. Ct. 720; *United States v. Reese,* 5 Dill. [U. S. C.
C.] 405; *In re M'Donough,* 49 Fed. 360, 362; *United
States v. Starn,* 17 Fed. 435; *French v. Foley,* 11 Fed.
801; *Fahnestock v. The State,* 102 Ind. 156, 1 N. E.
372; *Lair v. Killmer,* 25 N. J. Law, 522, 525; *The State
v. Lovell,* 23 Iowa, 304; *Daggett v. State,* 4 Conn. 60;
*Johnson v. Southern Pac. Co.,* 117 Fed. 462, 467.)
In this state the doctrine of strict construction was
early adopted. (*Snyder v. North Lawrence,* 8 Kan. 82.)
That case was cited in *M. K. & T. Rly. Co. v Long,* 27
Kan. 684, where the construction of a penal statute
was involved, indicating that the same rule of construc-
tion should prevail. In *Swift v. City of Topeka,* 43
Kan. 671, 23 Pac. 1075, 8 L. R. A. 772, a city ordinance
was construed liberally for the purpose of maintaining
its validity but strictly according to its letter to relieve
one charged with a violation thereof.

In the Snyder case the ordinance provided, among
other things, that no one should without license keep,
hire out, or cause to be run, "any hackney coach, car-
riage, omnibus, or dray." (Page 83.) In the agreed
statement of facts it was stated that defendant had
kept a certain wagon, drawn by four horses, which was
used in the transportation of property and for trans-

ferring goods of grocers and merchants within the city, and that he had paid no license-tax therefor. It was undoubtedly urged in that case, as it is in this, that the defendant was, by the intent and spirit of the ordinance, required to pay a license-tax. Indeed it would have been no strained construction to say that a wagon, drawn by four horses and used for the transportation of property and for transferring goods for grocers and merchants within the city, is a dray. Yet it was not within the letter of the law. Nor in this case is the business of real-estate agents within the letter of the law which imposes a license-tax upon the business of real estate.

The Snyder case was one that arose in the city court for the enforcement of the ordinance, while the case at bar is between two citizens, one of whom invokes a violation of the ordinance for the purpose only of relieving him of his obligations under a contract. In consonance with the general doctrine in a number of the cases cited, it was said in *Lair v. Kilmer*, 25 N. J. Law, 522:

"In defining the crime and the punishment, penal statutes are to be taken strictly and literally. A penal law can not be extended by construction. The act constituting the offense must be both within the spirit and the letter of the statute." (Page 525.)

We conclude that the admission that the plaintiffs were engaged in the business of real-estate agents in Scott City and had not procured a license for such business, and had made the contract in question in such city as such agents, does not prove that the making of such contract was a penal offense under the ordinance of the city; that the ruling of the court withdrawing ordinance No. 67 from the consideration of the jury was not an error of law.

True it is that the allowance of a motion for a new trial is a matter largely in the discretion of the district court, and especially so where questions of fact and the

weight of evidence are involved. In this case, by positive intimation the court approved all findings of fact involved in the general verdict of the jury in favor of the plaintiffs, which under the instructions of the court involved a finding that the failure to complete a sale of the land resulted from the fault or inability of the defendant "to do the things necessary by him to be done." The questions involved, then, as stated by the court, were purely questions of law, and the rulings of the court upon questions of law are not matters of discretion.

The order granting a new trial is therefore reversed and the case is remanded, with instructions to deny the motion and to render judgment for the plaintiffs in accordance with the general verdict.

BURCH, MASON, GRAVES, JJ., concurring.

PORTER, J. (concurring specially) : Aside from the ordinary rules for construing penal statutes and ordinances, a court would be justified in my opinion in construing the ordinance in question with the utmost strictness. Its enforcement is not demanded in order to carry out the purpose for which the legislature authorized its enactment, but solely to enable one person to avoid the payment of a just debt. In the recent case of *Fossett v. Lumber Co.,* 76 Kan. 428, 92 Pac. 833, it was said:

"The doctrine of *Yount v. Denning,* 52 Kan. 629, 35 Pac. 207, that a person who fails to pay an occupation tax can not recover for his services, is adopted for the protection of the licensing power of the state, not primarily for the benefit of some other person who has had dealings with him and who seeks to avoid the payment of what would be otherwise justly due. [Citing *Wicks v. Carlisle,* 12 Okla. 337, 72 Pac. 377.]" (Page 430.)

The decision in *Yount v. Denning,* 52 Kan. 629, 35 Pac. 207, holding that the failure to pay a license-tax renders a business or occupation unlawful, and that the failure can be interposed as a defense in an action

to recover for services rendered or property sold, may accord with the weight of authority, but its reasoning has never seemed conclusive, and it is doubtful if it has met with the general approval of the profession in this state. There is nothing in any of the statutes granting to cities the right to levy and collect an occupation tax which conveys the slightest intimation of an intention on the part of the legislature to delegate to cities the power to declare a business unlawful for the failure to pay such a tax. The various statutes authorizing the cities of the three classes to impose license-taxes all read about alike, and simply declare that the mayor and council may levy and collect a license-tax upon and regulate certain occupations, and that the licenses shall be regulated by ordinance and shall not be issued for a longer period than one year. There is implied the authority of the city to provide penalties for the enforcement of the ordinance and the collection of the tax. But ordinances, to be valid, must be reasonable, and courts have the power to declare them unreasonable. If a city were to ordain that a merchant who has failed to pay a license-tax should henceforth be denied the right to engage in such business in the city, or that his stock of goods be confiscated, it would not stand the test of the courts for a moment. And this is the place where the decision should have turned the other way in *Yount v. Denning.*

License ordinances usually provide a penalty by way of a fine for a failure to comply with their provisions, and sometimes provide also for the collection of the tax in an action of debt; therefore the additional penalty, forfeiting property and contract rights, is wholly unnecessary to enable the city to collect its revenue. So serious a penalty for the neglect to pay a mere nominal license-tax is out of all proportion to the offense. Besides, to allow another person whose rights have in no way been prejudiced to take such unconscionable advantage of the omission and avoid the payment of a just debt shocks the sense of justice. Following the

law as declared, however, this court recently, in *Mayer v. Hartman*, 77 Kan. 788, 90 Pac. 807, felt obliged to affirm a judgment permitting a man who had purchased several car-loads of coal to keep the coal and escape payment for it because the merchant who furnished it to him had failed to pay a city license-tax. It would seem that any city could better afford to lose a year's revenue from occupation licenses than to permit one such instance of failure of justice.

However, *Yount v. Denning* is the law of the state. It has stood for fourteen years, during which time the legislature might at any time have enacted a simple statute providing that the failure to pay a license-tax on a business otherwise lawful and requiring neither supervision nor regulation shall not render it unlawful. Until the situation is relieved by the legislature the courts should construe a license ordinance, when interposed for such a purpose, with the greatest strictness.

BENSON, J. (concurring specially) : The law of the state allowed the council to levy and collect a license-tax on real-estate agents. (Gen. Stat. 1901, § 1127.) The ordinance offered in evidence undertook to levy such a tax upon persons engaged in the business of "real estate." This expression is vague and indefinite, and the ordinance does not carry into effect the express power to levy a tax on real-estate agents given by the statute. For this reason the ordinance was invalid, the failure to pay the tax was not a defense to the claim for commissions, and the court erred in the third reason given for allowing the motion for a new trial.

The ordinance being properly excluded, the possible effect of the failure of the plaintiff to pay a tax levied under a valid ordinance is a question not presented in this record, and I prefer to express no opinion upon it.

I concur in the views expressed in the opinion of the court upon the other points involved, and concur in the result reached.

JOHNSTON, C. J., not sitting.