## FISHER *v.* CITY OF PARAGOULD.

## Opinion delivered February 12, 1917.

1.  MUNICIPAL CORPORATIONS—SUPPRESSION OF BAWDY HOUSES.—The Legislature has delegated to municipalities the power over the general subject of the control of the keeping of bawdy houses, with authority to define the exact elements of the offense, and it is a proper exercise of that authority for a municipality to define the offense as a house of ill-fame kept or used for the purpose of sexual prostitution and lewdness, whether kept and frequented by one female or more.

2.  MUNICIPAL CORPORATIONS—SUPPRESSION OF BAWDY HOUSES.—A municipal corporation has the authority to completely suppress bawdy houses or houses of ill-fame, and has the authority to prohibit men from entering them, as well as prohibiting women from being inmates thereof.

Appeal from Greene Circuit Court; *R. H. Dudley,* Judge; affirmed.

*Huddleston, Fuhr & Futrell,* for appellant.

This appeal presents but one question, viz.: Is a house occupied by its owner as a residence, who lives alone, and to which no other females resort for immoral purposes, but to which men of lewd and lascivious character resort for the sole purpose of unlawful sexual intercourse with said owner, who is a woman, and where no other improper or immoral conduct is suffered or permitted, a bawdy house? The ordinance was not violated and appellant was not guilty under the agreed statement of facts. 14 Cyc. 484; 1 Idaho 689; 45 N. W. 545; 20 Am. St. 401; 1 Bishop New Cr. Law, 655; 38 Ark. 637. The house was not a bawdy house under the ordinance.

*J. C. Shane,* for appellee.

Under the ordinance and agreed statement of facts the house of Annie Clark was a bawdy house, or house of ill-fame. 45 N.W. 545; 80 Iowa 75; 84 Am. Dec. 175; 38 Ark. 638; 9 Pac. 508; 14 Cyc. 484; 96 Iowa 262; 48 Ark. 60.

MCCULLOCH, C. J. Appellant was convicted of violating an ordinance of the City of Paragould en-

acted for the purpose of suppressing bawdy houses. The ordinance in question makes it unlawful for any person to keep a bawdy house or to be an inmate thereof, or to frequent such a place, and defines a bawdy house to be a "house of ill-fame kept or used for the purpose of sexual prostitution and lewdness, whether kept or frequented by one female or more." The case was tried in the circuit court on an agreed statement of facts to the effect that appellant frequented the house of one Annie Clark, who was a prostitute, and who kept and used the house for her residence and for the purpose of sexual intercourse; that Annie Clark was the sole female inmate of the house and no other females resorted thereto for immoral purposes, but that "said house was at that time the resort of men of lewd and lascivious character, visiting said house for the sole purpose of unlawful sexual intercourse with said Annie Clark, and that no other immoral or improper conduct was therein suffered or permitted except as herein stated."

The contention of appellant is that the conviction is erroneous for the reason that, according to the undisputed facts, the house kept by Annie Clark being the place of her residence, and containing no other female inmate, was not a bawdy house within the correct definition of that term.

The municipality derived its sole authority to enact the ordinance from the statute which authorizes municipal corporations "to regulate or suppress bawdy or disorderly houses, houses of ill-fame or assignation." Kirby's Digest, section 5438. The statute itself does not define the terms bawdy house or houses of ill-fame or assignation, but those terms are used interchangeably as meaning substantially the same thing. A bawdy house, according to the common law definition, is "a house of ill-fame kept for the resort and convenience of lewd people of both sexes." State v. Porter, 38 Ark. 637. Another definition is stated as follows: "A bawdy house, or house of ill-fame, is a house kept for the shelter and convenience of persons desiring unlawful sexual

intercourse and in which such intercourse is practiced."
14 Cyc. 484. The authorities do not, we think, bear
out the contention of appellant that a house kept by a
prostitute for purposes of prostitution does not come
within the definition of a bawdy house merely because
it has no other female inmate. On the contrary, we
think that all of the elements of the offense may be com-
plete, even though the prostitution is carried on by one
woman who is the keeper of the house. It does not fol-
low, however, that the house can be classed as a bawdy
house merely because one prostitute lives therein and
has intercourse habitually, or frequently, with one or
more men, but if the woman living alone there keeps the
house for the purpose of having sexual intercourse with
any men who desire to resort to the place then it is a
bawdy house within the strict definition of the term.
That view is supported by the following authorities:
*State* v. *Young*, 96 Ia. 262; *People* v. *Slater*, 119 Cal.
620; *People* v. *Buchanan*, 1 Idaho 681; *Ramey* v. *State*,
(Texas Cr. App.), 45 S. W. 489.

In *State* v. *Young*, *supra*, the Iowa court held that
a house in which a man kept his wife for general pur-
poses of prostitution was a bawdy house or a house of
ill-fame, and sustained a judgment of conviction against
him for that offense. We are further of the opinion
that even though the offense was not completely within
the common law definition, the Legislature has dele-
gated to municipalities power over the general
subject and with authority to define the exact elements
of the offense, and it was a proper exercise of that au-
thority for the municipality in this instance to define
the offense in the language of the ordinance as "a house
of ill-fame kept or used for the purpose of sexual prosti-
tution and lewdness, whether kept and frequented by
one female or more." The power of complete suppres-
sion being delegated to the municipality, it included the
authority to prohibit men from frequenting such places,
as well as prohibiting women from being inmates
thereof.

The agreed statement sets forth facts which bring appellant's conduct strictly within the terms of the ordinance and the judgment of conviction was correct, and the same is affirmed.