## THE STATE *vs.* JOHN D. CARPENTER.

New Haven & Fairfield Cos., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, JS.

A city ordinance, authorized by the city charter and by Gen. Statutes, § 2573, provided that every person who should keep a place for the playing of the game known as "policy," or of allowing others to play it, should be fined not more than one hundred dollars; and that every person owning or controlling any building or place, who should knowingly permit the same to be occupied for the purpose of playing that game, should be fined not more than one hundred dollars. Held not

necessary that the ordinance should set out the particular facts that constituted the game of policy.

The court would take notice of the fact that the term " policy playing " was in current use when the ordinance was passed.

And the ordinance held not to be invalid on the ground that the statute authorizing the city to pass it violated the rule that legislative power cannot be delegated. It is now generally conceded by the courts of this country and of England that powers of local legislation may be granted to cities, towns, and other municipal corporations.

Neither the statute nor the city charter contained any limitation of the penalty that might be fixed by the ordinance. Held that a limitation was necessary, but that it was sufficient that the ordinance fixed it, so long as it was not unreasonable in amount.

If an offense is created by statute it is sufficient to describe it in the words of the statute.

The averment in a complaint that the accused " did keep a place where policy-playing was carried on, contrary to the ordinance, etc.," held bad because not averring his knowledge that it was so carried on, and that the place was kept for that purpose.

[Argued October 30th, 1890—decided January 27th, 1891.] .

Two complaints in the City Court of the city of Bridgeport, the first charging that the defendant, "within the corporate limits of the city, did keep a place where policyplaying was carried on contrary to the ordinance of the city ;" and the second that the defendant "did, within said city, keep a place for the playing in and conducting and carrying on the game and scheme commonly known as policy, contrary to the ordinance, etc." Both cases were appealed to the Criminal Court of Common Pleas, where the defendant demurred to both complaints. The court (*Walsh, J.,*) overruled the demurrer, and, the defendant not answering further, rendered judgment against him. The defendant appealed from both judgments.

*D. B. Lockwood,* for the appellant.

1. The complaint does not specify the criminal nature of the offense, nor does it contain any description of the offense. Many *dicta* are to be found in the reports to the effect that it is a well settled rule of the common law "that in setting out a statutory offense it is generally sufficient to follow the words of the statute." *State* v. *Lockbaum,* 38 Conn., 400 ;

*State* v. *Jackson*, 39 id., 229. There is no such rule of law. No distinction is made by the common law as respects the degree of particularity and precision essential to the description of an offense between statutory and common law offenses. All indictments must specify the criminal nature and degree of the offense, and the particular facts and circumstances which render the defendant guilty of that offense. If the statute sets out fully and precisely the necessary ingredients of the offense, then an indictment is generally sufficient which follows the words of the statute. But such indictment is good not because it follows the words of the statute, but because it satisfies the common law rules of pleading. 1 Starkie on Crim. Plead., ch. 12; 1 Archbold's Crim. Prac. & Plead., (8th ed.,) 265–272; 1 Bishop on Crim. Proced., (3d ed.,) §§ 415–420, 509, 593, 630; Bishop on Statutory Crimes, §§ 373, 378; *State* v. *Bierce*, 27 Conn., 319; *State* v. *Lockbaum*, 38 Conn., 400; *Roberson* v. *City of Lambertville*, 38 N. Jer. Law, 69, 72; *Com.* v. *Welsh*, 7 Gray, 324. It is undoubtedly true, as a matter of fact, that where a statute creates an offense it is generally sufficient to follow the words of the statute. But this is true only because when the legislature makes a new offense it generally specifies the facts necessary to constitute the offense. 1 Green's Cr. Law Rep., p. 295, note to *State* v. *Jackson*. Indictments must contain a statement of all the facts essential to constitute the crime with such particularity and certainty that the defendant may know its nature and what he has to answer; that the jury may be warranted in their conclusion of guilty or not guilty upon the premises delivered to them; that the court may see a definite offense on the record, to which it may apply the judgment prescribed by law; and that the conviction or acquittal of the defendant may be pleaded in bar to a subsequent prosecution for the same offense. 2 Swift's Digest, 396; 1 Chitty Crim. Law, 169; 1 Archb. Crim. Prac. & Pl., 265; 2 Bishop's Crim. Proced., §§ 105, 275; Rapalje's Crim. Proced., § 113; *Rex* v. *Horne*, Cowp., 682; *Rex* v. *Aylett*, 1 T. R., 69; *Hall* v. *People*, 43 Mich., 417

*People* v. *Taylor*, 3 Denio, 91 ; *Wood* v. *People*, 53 N. York, 511.

2. The ordinance is of no effect because it does not set out the facts and circumstances which constitute the crime of "policy-playing." From all that appears in the information, "policy-playing" may have been carried on without the knowledge of the defendant. The information does not charge that he kept a place "for the purpose" of policy-playing. Under sec. 9, art. 1, of the state constitution, the accused in all criminal prosecutions has the right to demand the *nature* and cause of the accusation against him.

3. The ordinance is unconstitutional. The legislative power of the state is vested in the General Assembly. Const. of Conn., art. 3, sec. 1. One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Cooley's Const. Lim., 141, and cases there cited. Section 2573 of the General Statutes, upon which this ordinance is based, is unconstitutional, not only for the reason that it is a delegation of legislative power, but also for the reason that it contains no limitation of the punishment. In *State* v. *Tryon*, 39 Conn., 183, which was a complaint for a violation of a city ordinance of New Britain, the court held that the charter of the city which authorized the common counsel to pass ordinances and inflict a penalty for the violation thereof was not unconstitutional, because the charter provided that no penalty should exceed fifty dollars. If policy-playing is gambling, or lottery dealing, then those offenses are fully covered by the General Statutes of the state. In the case of *Mayor etc. of Savannah* v. *Hussey*, 21 Geo., 80, LUMPKIN, J., says, (p. 86:) "I deny that a municipal corporation can legislate *criminaliter* upon a case fully covered by the state law." Gambling being punishable under the general law, a city council "invested with authority to make ordinances to secure the inhabitants against fire, against violations of the law and the public peace, to suppress riots, *gambling*, drunkenness, etc., and generally to provide for the safety, prosperity and good order of the city.'

possesses, by virtue thereof, no power to make the keeping of any gambling device a misdemeanor, and to punish the same. *Mount Pleasant* v. *Breeze*, 11 Iowa, 399. See also *Slaughter* v. *The People*, 2 Doug. (Mich.,) 334; *In re Lee Tong*, 18 Fed. Rep., 253.

*J. C. Chamberlain* and *W. B. Glover*, for the State.

LOOMIS, J. The appellant is defendant in two complaints for a violation of a city ordinance prohibiting, under penalty of a fine, the keeping of a place for policy-playing within the limits of the city of Bridgeport.

The complaints were originally presented by the prosecuting attorney of the city to the City Court, and were appealed by the defendant to the Criminal Court of Common Pleas for the county of Fairfield, where the defendant filed general demurrers to the complaints, which were overruled by the court. The questions for review, as presented by the reasons for the appeal to this court, are precisely the same in both cases, and have reference to the validity of the complaints and to the validity of the ordinance upon which they are founded.

The ordinance is styled "An ordinance relative to Policy-Playing," and is as follows:—

"SECTION 1. Every person, whether as principal, agent or servant, who shall keep or manage, or have any interest in the keeping or managing of, any room, place or shop for the purpose, in whole or in part, of playing, conducting or carrying on, or of allowing any other person or persons to play, conduct or carry on, the game, business or scheme commonly known as policy; or who shall write, transfer, sell, deliver or buy, in whole or in part, any of the slips, tickets, tokens, numbers or chances used in or connected with such game, business or scheme of policy; or who shall in any other way knowingly take any part whatever in such game, business or scheme of policy, or in any part thereof, shall be fined not more than one hundred dollars.

"SEC. 2. Every person owning or controlling any build

ing, room or place, who shall knowingly let, lease or permit the same to be occupied, used or resorted to for the purpose of playing, conducting or carrying on, in whole or in part, the game, business or scheme commonly known as policy, shall be fined not more than one hundred dollars.

"SEC. 3. No person summoned as a witness on the part of the city, in any prosecution under either of the two preceding sections, shall be excused from testifying by reason that the evidence he may give will tend to disgrace or criminate him; nor shall he thereafter be prosecuted for anything connected with the transaction about which he shall so testify."

The defendant alleges in his reasons of appeal, and argues in his brief, that the ordinance is of no effect because it does not set out fully and precisely the necessary ingredients which constitute the offense charged. There are many offenses created by statute that could not stand such a test, for it would seem to require that all general words used to indicate the offense to be punished should be particularly defined. Take for illustration section 283 of the General Statutes, which makes it a crime to keep a place resorted to for the purpose of selling or buying pools upon the result of any election. There is no definition given of "pools" and the ingredients of the offense are not mentioned, but it would require some hardihood to claim that the act on that account would be of no effect. The objection overlooks the fact that the prohibited acts may have a general name to characterize them, as well understood without as with a definition. We think this is true of the act in question. It may be that the term "policy-playing" is of recent origin, but we may properly take notice of the fact that it was in current use when the ordinance in question was enacted, and in Webster's Imperial Dictionary the third definition of the word "policy," used as a noun, is—" A method of gambling by betting as to what numbers will be drawn in a lottery; as to play policy."

But if the ordinance is sufficiently certain as to the acts prohibited, it is claimed to be unconstitutional in that the

statute authorizing the city to pass such an ordinance violates the fundamental maxim of constitutional law, that legislative power cannot be delegated. But this maxim cannot be applied in the unlimited manner asserted, for, if it could, it would invalidate every city charter and every ordinance, for the municipality has no life or power at all except as delegated to it by the legislature either through its charter or by means of statutes. The maxim therefore which is cited in behalf of the defendant must be understood in the light of the immemorial practice of this country and of England, which has always recognized the propriety of vesting in municipal organizations certain powers of local regulation in respect to which the parties immediately concerned may fairly be supposed more competent to judge of their needs than the sovereign power of the state.

It is now generally conceded by the courts of this country and of England that powers of local legislation may be granted to cities, towns and other municipal corporations. Cooley on Constitutional Limitations, 4th ed., top page, 230; and see authorities cited in note 1. The case of *State* v. *Tryon*, 39 Conn., 183, decided by this court, contains a sufficient answer to this objection.

But the counsel for the defendant urges another reason for the claim that the ordinance is unconstitutional, namely, that section 2573 of the General Statutes, which authorized the common council of the city to enact by-laws " to suppress and punish all kinds of gambling and gaming, pool selling, policy playing, lottery dealing," etc., contained no limitation of penalty, and is therefore void. The case of *State* v. *Tryon*, just referred to, is cited to sustain this position, and it is said that the court held the by-law in that case constitutional because the charter provided that no penalty should exceed a sum mentioned.

The fact that the legislature had fixed a maximum penalty, which the common council had not exceeded, was referred to in the discussion, but was given a very different application from that made in the argument for the defendant. The contention in that case did not turn on the amount of

the penalty, but solely on the point that the legislature had no authority to delegate power to the city council to define and determine what should be crime. The discussion by the court was confined strictly to that claim; and the reply was, in substance, that the common council merely exercised the power conferred by passing the ordinance, and that when passed it was the statute that declared the act a crime. Then, in answer to the suggestion that the common council did actually fix the penalty, the reply was that the legislature had fixed the maximum penalty, which was none too great, and the fact that the common council might reduce it did not show that the council made the act a crime, and the point was illustrated by reference to statutes that confer on a judge of the Superior Court a discretion, within certain bounds, in passing sentence for a violation of some criminal law. The use made of the fact that the penalty was there limited in the charter was pertinent to the discussion in hand, but we have never understood the case as holding that a limitation as to the penalty must be found either in the public statutes or in the charter in order to make the ordinance valid. There must be a limitation somewhere, either in the statute authorizing the ordinance, or in the charter, or in the ordinance itself, and if in the last the courts will determine whether the amount is reasonable or not. But if fixed in either of these ways and found reasonable in amount it will be valid. *Bowman* v. *St. John*, 43 Ill., 337; *Town of Ashton* v. *Ellsworth*, 48 Ill., 299.

. In 1 Dillon on Municipal Corporations, 4th ed., § 341, it is said:—"A municipal corporation, with power to pass by-laws and to affix penalties, may, if not prohibited by the charter, or if the penalty is not fixed by the charter, make it *discretionary within fixed reasonable limits*, for example ' not exceeding fifty dollars.' The maximum limit must of course be reasonable. This enables the tribunal to adjust the penalty to the circumstances of the particular case, and is just and reasonable. The older English authorities, so far as they hold such a by-law void for uncertainty, are regarded as not sound in principle, and ought not to be fol-

lowed." See the authorities referred to in note 2, to the same section. In the same treatise, § 338, it is said:— "Since an ordinance or by-law without a penalty would be nugatory, municipal corporations have an implied power to provide for their enforcement by reasonable and proper fines against those who break them."

No claim has been made in this case that the maximum penalty of one hundred dollars fixed by the ordinance is an unreasonable amount, and no reasons occur to us that would tend to show it. And as there is ample authority in the act referred to for the enactment of such an ordinance, and as the subject matter is an appropriate one for municipal regulation, we conclude that the ordinance is valid in every respect, and that the defendant is liable for its violation, provided he has been prosecuted and tried for the offense according to law.

And this brings us to the only remaining question in the case—are the complaints sufficient? The first complaint alleges "that on the 7th day of February, A. D. 1890, within the corporate limits of said city, John D. Carpenter, then of said city, with force and arms, did keep a place where policy-playing was carried on, contrary to the ordinance of said city, against the peace, and contrary to the form of the statute in such case provided." The other complaint alleges "that on the 24th day of February, A. D. 1890, within the corporate limits of said city, John D. Carpenter, then of said city, with force and arms, did keep a place for the playing in, and conducting and carrying on the game, business and scheme commonly known as 'policy,' contrary," etc., concluding as before.

The principles to which we have already referred in discussing the validity of the ordinance sufficiently show that there can be no foundation for the objection that the complaints do not contain a sufficient description of the offense. By section 997 of the General Statutes it is provided that in all complaints for an offense against an ordinance or by-law of any town, city or borough, it shall be sufficient to set forth the offense in the same manner as in case of offenses

created by a public act. And in this state it has been set-
tled by many decisions of this court that if an offense is
created by statute it is sufficient to describe the offense in
the words of the statute. *Whiting* v. *The State*, 14 Conn.,
487; *State* v. *Bierce*, 27 id., 319; *State* v. *Lockbaum*, 38 id.,
400; *State* v. *Cady*, 47 id., 44; *State* v. *Schweitzer*, 57 id.,
537.

The second complaint comes fully within the strictest
rule and is beyond all question good. The first complaint
is defective in that it entirely omits any allegation that the
defendant kept the place for the purpose of policy-playing
or with knowledge that it was carried on there. There is
no doubt that a consenting mind is an essential ingredient
of the offense. The ordinance itself gives unusual promi-
nence to this feature of the crime. It starts off with a direct
statement that the place must be kept for this "*purpose;*"
then follows the alternative "or of *allowing* any other person
or persons to play," etc.; then, after specifying several par-
ticular acts, it adds—"or who shall in any other way *know-
ingly* take any part whatever in such game," etc. Section 2,
also, which punishes the leasing of a room or building for
the purpose, qualifies the act by the use of the word "know-
ingly."

Our conclusion therefore is that the court erred in over-
ruling the demurrer to the first complaint, and that there is
no error in the judgment upon the second complaint.

In this opinion the other judges concurred.