TERRITORY OF HAWAII EX REL. COUNTY OF OAHU
*v.* WILLIAM L. WHITNEY, DISTRICT MAGIS-
ISTRATE OF HONOLULU, ISLAND OF OAHU.

ORIGINAL.

ARGUED NOVEMBER 8, 1905.    DECIDED NOVEMBER 24, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

ORDINANCES—*legislature may delegate to county supervisors power to*
*make.*

The legislature may delegate to county boards of supervisors
power to make police ordinances of a local nature, such as
ordinances relating to gambling.

ID.—*construction of statute authorizing.*

Under an act authorizing county boards of supervisors "to
regulate by ordinance * . * * local police * * * and other
regulations * * * and affix a penalty for the violation of such
ordinances," held: "regulate" should be construed as "make"; the
act authorizes county boards of supervisors but not the people of
a county to make ordinances against gambling, but not to impose
imprisonment as a penalty, nor to make a violation a misdemeanor,
nor to confer jurisdiction on district magistrates.

ID.—*enacting clause.*

An ordinance need not contain an enacting clause; it may be
valid if in fact made by the board of supervisors though purporting
in its enacting clause to have been made by the people of a county.

ID.—*prosecutions under, are criminal in nature.*

Prosecutions for violations of county ordinances are criminal
rather than civil in their nature, as shown by various provisions
of the county act.

ID.—*jurisdiction of offenses against.*

In the absence of statutory provision as to what courts shall
have jurisdiction of offenses against county ordinances, the appro-
priate Territorial courts have jurisdiction according to the gen-

eral laws defining their jurisdiction over offenses against the Territorial laws. The provision of the county act that the county attorney shall be the public prosecutor for the county and attend the circuit court in and for the county and conduct all prosecutions therein for offenses against the laws of the Territory and the ordinances of the board of supervisors of the county, is held, especially in view of other provisions, not to give circuit courts exclusive jurisdiction of offenses against ordinances.

ID.—*prosecution for offenses against, should be in name of Territory.*
     Prosecutions for offenses against county ordinances should be in the name of the Territory.

MANDAMUS—*requiring magistrate to take jurisdiction.*
     The district magistrate having declined to take jurisdiction of a complaint for a violation of a county ordinance, and being held to have such jurisdiction, is required to take jurisdiction, but is not required to act in a particular manner.

## OPINION OF THE COURT BY FREAR, C.J.

This is an application for a writ of mandamus to compel the respondent as district magistrate of Honolulu, one of the judicial districts within the county of Oahu, to issue a warrant for the arrest of each of five named persons upon a sworn complaint charging them with a violation of an ordinance made by the board of supervisors of the county of Oahu prohibiting the exposure of gambling implements in a room barred so as to make it difficult of access when three or more persons are present, or the visiting of such a room so barred under such circumstances, and to take jurisdiction of such a charge,—the said respondent having refused to issue such warrant or take such jurisdiction solely on the ground that he had no jurisdiction over the subject matter of any ordinances made by said board of supervisors.

The question that presents itself first is whether it is in the power of the legislature to authorize county boards of supervisors to make ordinances of the kind in question. There can be no doubt that such authority may be conferred upon cities and other municipal corporations proper. It is conceded for the purposes of this case by counsel for the respondent that such

authority may be delegated to counties also, which are generally
classed as quasi municipal corporations. This, however, is by
no means clear.

It is not usual to give such power to counties. In a number
of states in which it has been given, it has been under express
constitutional provisions. See *County of Los Angeles v. Eiken-*
*berry,* 131 Cal. 461; *State v. Forest County,* 74 Wis. 610; *Peo-*
*ple v. Baker,* 29 Barb. 81; *Feek v. Township Board,* 82 Mich.
399; *Board of Commissioners v. Abbott,* 52 Kan. 148 (34 Pac.
416). In some states the constitution grants the power directly,
in others it authorizes the legislature to grant it. In either case,
however, the fact that the grant is made or authorized by the
constitution does not necessarily show that it could not be made
by the legislature in the absence of express constitutional author-
ization. This is apparent when, as is the case in some states,
the constitutional provision covers not only counties but also
cities and other municipal corporations proper, as to which there
can be no doubt of the power of the legislature irrespective of
express constitutional authorization. So, when the constitu-
tional provision itself makes the grant, it may be explained on
the theory that it was deemed best not to leave discretion in the
legislature to withhold the grant. In other cases the constitu-
tional provision may have been inserted out of abundant cau-
tion. There is room for argument that such authority, in the
nature of constitutional authority, is implied from the language
of Section 56 of the Organic Act, which authorizes the Terri-
torial legislature to "provide for the government" of, as well
as "create counties and town and city municipalities." We will
proceed, however, as if the words first quoted from this section
did not add in this respect to the powers of the legislature
implied from the words last quoted.

Counties doubtless have not inherent or implied power, as
municipal corporations proper have, to make by-laws, but even
in the case of municipal corporations proper the power to make
police ordinances of the kind in question, as distinguished from
mere by-laws relating to the internal management of the corpor-

ation itself, is held to be an additional power——to be conferred by express or implied grant, and not implied from the mere character of the municipal body as a corporation proper. *Commonwealth v. Bennett,* 108 Mass. 27; *Paul v. Gloucester Co.,* 50 N. J. L. 585, 600; *Commonwealth v. Turner,* 1 Cush. 493.

No case has come to our attention which holds that the legislature may not without express constitutional authorization empower a county to make ordinances. The difficulty arises not so much from decisions against the proposition as from lack of decisions in support of it and the uncertainty as to the precise reasoning upon which the question should be decided. There are indeed general expressions in both text books and decisions to the effect that power to make ordinances may be delegated to "other municipal corporations" or "quasi corporations" as well as to cities and towns, and also decisions that seem to take it for granted that such power may be so conferred. See Ingersoll, Pub. Corp., Sec. 19; McQuillin, Mun. Ord., Secs. 38, 90; *Commonwealth v. Turner,* 1 Cush. 493; *State v. Noyes,* 30 N. H. 279; *Haigh v. Bell,* 41 W. Va. 19 (31 L. R. A. 131; *Forsyth v. City of Hammond,* 71 Fed. 443. For instance, in *Dunn v. Wilcox Co.,* 85 Ala. 144 (4 So. 661), the court, referring to a particular provision in the constitution, said: "It was not intended to prohibit the delegation to counties of the quasi legislative powers commonly exercised by them as government or auxiliary agents of the state, and for local purposes. * * * This would defeat, rather than promote, that peculiarly American feature of Republican government, which is one of decentralization, 'the primary and vital idea of which is that local affairs shall be managed by local authorities.'"

This brings us to the question of the principles upon which the question should be solved. It is a fundamental rule that delegated power cannot be delegated. This applies to legislatures as well as to other bodies. Legislative power delegated to legislatures cannot be delegated to other persons or bodies. There is, however, an exception to this maxim as well established as the maxim itself. This exception arises by implica-

tion from the immemorial practice which has recognized the propriety of vesting in municipal organizations certain powers of local regulation over matters in which the persons within such organizations are especially interested and in regard to which they are supposed to be especially competent to judge. Cooley, Const. Lim., 7th Ed., 156, 264; 1 Dillon, Mun. Corp., Sec. 308; *State v. Carpenter,* 60 Conn. 97. The implication is that in delegating to legislatures the legislative power the people could not have intended to prevent the further delegation by the legislatures of certain police and other powers of a local nature which had always been exercised by municipal corporations and the exercise of which by the local communities acting through such corporations has been regarded as one of the fundamental features of the American and English systems of government. The question is, how far does this exception extend? Does it extend to quasi corporations such as counties, which usually have not exercised such powers, as well as to corporations proper such as cities, which usually have exercised such powers? The only case so far as we are aware in which this question is directly or adequately considered is that of *Paul v. Gloucester County,* supra. One of the questions in that case was whether a provision in a liquor act that the act should operate or not in any particular county according to a vote of the majority of the legal voters in such county, was valid. The court, fifteen judges sitting, held, eight to seven, that it was valid. Lengthy and powerful opinions were given on each side. Several questions were discussed more or less related to the question now before us besides the particular question now presented. Among these was that of the contingent theory of legislation, under which legislation is held permissible if it is complete in praesenti though not to take effect except upon the happening of a future event the determination as to the happening of which is left to some other body than the legislature; but if the contingent event is to be the vote of the people of the state, the legislation is not permissible, for that would in effect be to delegate to the people the very question,

namely, that of the expediency of the law, upon which the legislature itself should pass.  Another question discussed was whether the legislature could properly provide that the act should or should not take effect in any particular locality according to the vote of the people in that locality.  This is substantially the question whether the legislature may delegate to the people of a particular locality such powers of legislation as it may delegate to municipal corporations proper under the well established exception above referred to, for it would seem that if the legislature may delegate the power to make ordinances of a local nature to the people of a particular locality it may also delegate to the same people the power to decide whether the law enacted by the legislature itself should operate in that locality.  Upon this question courts are divided.  For cases holding that legislative power may be so delegated, see McQuillin, Mun. Ord., Sec. 426.  The majority and minority opinions then proceeded to discuss the question whether the delegation of such authority was valid if the locality, to the people of which the vote was referred, was a county, that is, an established quasi municipal corporation.  The majority of the court apparently proceeded on the theory that the delegation was practically to the county, and undertook at considerable length to show that the power to delegate depended not upon the name or extent or character of the political subdivision of the state to which the power was delegated but upon the character of the grant.  If the grant was of a power to enact general legislation it was void, but if it was restricted to such powers, in the nature of police powers, as were necessary to local government, it was valid.  The minority took the view that the delegation of power in that instance was not to the county but to the people within a certain area, and that it was immaterial that such area happened to be a county.  It did not doubt the ability of the legislature to create municipal corporations or to invest the people within any territorial limits, whether the limits were coincident with those of a county or not, with corporate functions, or to confer upon such corporate organizations the right to exercise

police power, including the entire control and regulation of the
sale of spirituous and malt liquors, but it denied that a mere
attempted grant of legislative power to the people within a cer-
tain area would invest such people with corporate functions.
It did not deny the authority of the legislature to confer police
power upon a county possessing corporate functions, although it
pointed out the ordinary distinction between the functions of a
county organized to assist in the administration of the general
laws of the state and a municipal corporation proper organized
for local and police purposes. The majority opinion was fol-
lowed without dissent by the court, eleven judges sitting, in
*Noonan v. County of Hudson,* 52 N. J. L. 398, under an act
authorizing county boards to construct public roads through
counties and to submit the question whether such roads should
be constructed to the electors of the counties.

The county act now in question provides, in subdivisions 1
and 8 of Section 9 (Laws of 1905, Act 39), "that each county
shall be a body corporate and politic" and is subject to "sue and
be sued in its corporate name." It confers upon counties vari-
ous corporate functions. The act as a whole was passed for
the purpose of establishing, as far as it went, local government,
although theoretically the counties established by the act may
properly be considered as quasi corporations rather than munici-
pal corporations proper. The act also confers upon the boards
of supervisors certain legislative powers other than that now in
question, as, for instance, (Sec. 62, Subd. 1), "to fix the sala-
ries of all county officers, not herein otherwise provided for."
This is a delegation of power which is generally held valid
elsewhere except when expressly prohibited by constitutional
provision.

The case of a territory of the United States is somewhat
analogous. The rule that delegated power cannot be delegated
applies to Congress as well as other legislative bodies, as has
been held repeatedly. Territories, moreover, are not municipal
corporations proper, but, as was said in *National Bank v.
County of Yorktown,* 101 U. S. 129, "their relation to the gen-

eral government is much the same as that which counties bear to the respective states," and yet it cannot be doubted that Congress may delegate legislative powers to territories.   See also *Coffield v. Territory,* 13 Haw. 478.

On the whole we are of the opinion that the legislature could delegate to the county boards of supervisors power to make ordinances relating to certain matters of local concern.

Power has been conferred expressly by the county act (Sec. 62, Subd. 5) upon the board of supervisors of each county,

"5.   To regulate by ordinance within the limits of the county, all local police, sanitary and other regulations not in conflict with the general laws of the Territory, or rules and regulations of the Territorial board of health, and fix a penalty for the violation of such ordinances."

This is sufficient authority for the enactment of an ordinance of the kind in question.   Gambling is one of the subjects as to which power to make ordinances may be delegated.   See *State v. Carpenter,* supra.

The language of this authority is open to criticism, for in terms it is an authority to "regulate   *  *  *   regulations," which, construed strictly, would not make good sense and would apply only to regulations already in existence, but the intention is so clear that we may well construe "regulate" as "make." See *Shillaber v. Waldo,* 1 Haw. 40; *Republic v. Waibel,* 11 *Id.* 226; *Hall & Son v. Dickey,* 15 *Id.* 593; *Mankichi v. Hawaii,* 190 U. S. 197.

Moreover, we do not understand that this statutory provision authorizes the board of supervisors to impose imprisonment as a penalty, although as to that we are not required to decide, for the ordinance, which imposes a fine not exceeding $500 or imprisonment for not more than six months or both, may stand even if the part relating to imprisonment is void.   Of course the penalty, whatever its character, should be reasonable in amount, and it is usual for statutes to specify both the character and the maximum amount that may be prescribed by the ordinance.   This statute does not specify either.   It is generally

held that penalties, such as imprisonment and forfeiture, other than pecuniary cannot be prescribed in the absence of express statutory authority (See McQuillin, Mun. Ord., Sec. 173; 1 Dillon, Mun. Corp., Secs. 336-338, 408-410; 1 Smith, Mun. Corp., Secs. 546, 550; Ingersoll, Pub. Corp., Sec. 76), although it is held in some cases at least that power expressly conferred to enforce ordinances or pecuniary penalties imposed under ordinances includes power to imprison, not as a punishment, but as a means of enforcing payment of such penalties when imposed. *Ex parte Green,* 94 Cal. 397; *Natal v. Louisiana,* 139 U. S. 621.

The enacting clause of the ordinance also is invalid. It reads: "The people of the county of Oahu do ordain as follows:" The power to make ordinances is conferred upon the board of supervisors and not upon the people of the county. But this does not invalidate the ordinance, for it did not have to contain any enacting clause, and the petition and return show that it was in fact made by the board of supervisors.

The next question is whether the proceeding to enforce the ordinance is civil or criminal and within the jurisdiction of a district magistrate. The respondent contends that the proceeding is civil, that the county act does not confer jurisdiction of cases under county ordinances upon district courts, that the jurisdiction of such courts, of inferior and limited jurisdiction, should be strictly construed and that the board of supervisors could not either create a court or confer jurisdiction upon one or make an act a misdemeanor. The ordinance in question purports to make a violation of it a misdemeanor and to confer jurisdiction of offenses arising under it upon all district magistrates within the county. We will assume that these portions of the ordinance are void or surplusage, as they doubtless are. The question is whether a violation of the ordinance is a criminal offense and whether jurisdiction over it has been conferred upon the respondent, not by the ordinance itself, but by the laws of the Territory, including the county act. Whether violations of municipal ordinances are of a criminal or civil nature

is a question upon which the courts are very much divided.. Some courts hold that they are criminal; others, that they are civil; others, that they are civil or criminal according to their nature, and still others, that although they are civil the procedure should be stricter than in ordinary civil cases.    See Ingersoll, Pub. Corp., Sec. 77; 1 Dillon, Mun. Corp., Sec. 411; 1 Smith, Mun. Corp., Sec. 554; McQuillin, Mun. Ord., Sec. 304; 15 Enc. Pl. & Pr. 412 et seq.    Whether they should be regarded as civil or criminal depends much upon the language of the statute taken as a whole and to some extent upon the nature of the act charged.    So far as its nature is concerned,. the act in the present case would naturally be the subject of a criminal statute.    If in addition to this the language of the provision already quoted is not sufficient—from the natural meaning of the word penalty and the nature of the subjects in regard to which ordinances may be made—we think that there is sufficient in the first subdivision of section 90 of the county act, which provides that,

"The county attorney is the *public prosecutor* for the county in which he shall have been elected and he, or his deputy shall:

"1.    Attend the circuit court in and for said county and conduct *on behalf of the people all prosecutions* therein for *offenses* against the laws of the Territory of Hawaii and the ordinances. of the board of supervisors of the county."

This shows an intention on the part of the legislature that at least some violations of some ordinances of boards of supervisors were to be offenses to be prosecuted as such by the public prosecutor and on behalf of the people, in other words, that they were to be considered criminal or public offenses.    If any such violations are to be regarded as such offenses, those now in question are certainly among them.    Moreover, offenses against ordinances are classed with offenses against laws, as if both were: of the same character.

If, as we hold, the violation of this ordinance is a criminal offense it would be within the jurisdiction of a district magistrate under Sec. 1664 of the Revised Laws, which provides that:

such magistrates shall have jurisdiction of "criminal offenses punishable by fine or by imprisonment not exceeding one year * * * whether with or without fine." The county act having made no provision for local or special courts to try cases arising under county ordinances the implication is that, to avoid the absurdity of rendering all such ordinances nugatory, such cases were intended to be tried by the appropriate Territorial courts. Ingersoll, Pub. Corp., Sec. 77, p. 252; 1 Smith, Mun. Corp., Sec. 548, note 386; 1 Dillon, Mun. Corp., Sec. 409, note 3, the two authors last mentioned citing *Columbia v. Harrison,* 2 Const. (S. C.), 213. As between the circuit and district courts of the Territory, the case now in question would naturally fall within the jurisdiction of the latter.

It is suggested, however, that the first subdivision of section 90 of the county act above quoted gives exclusive jurisdiction under county ordinances to the circuit courts. Subdivision 3 of the same section has some bearing upon this question. It reads thus:

"3. Institute proceedings or direct the sheriff or deputies to do so before the magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that any such offenses have been committed; and for that purpose take general charge of criminal cases in the district courts either in person or by the sheriff, deputy sheriff or such other prosecuting officer as he shall appoint; attend upon the magistrates in case of arrest; and attend before and give advice to the grand jury whenever cases are presented to them for their consideration; provided, however, that nothing herein contained shall prevent the institution or conduct of proceedings by private counsel before magistrates under the direction of the county attorney."

Reading these subdivisions (1 and 3) together it is apparent that the circuit courts were not intended to have exclusive jurisdiction of offenses against ordinances. The fact that ordinances were mentioned in the first subdivision and not in the third would not show that the circuit courts were to have exclusive jurisdiction of offenses under them any more than the fact that the laws of the Territory were mentioned in the first sub-

division and not in the third would show that the circuit courts were to have exclusive jurisdiction of offenses under them. Such laws and such ordinances were mentioned once, namely, in the first subdivision, and were evidently intended to be implied in the subsequent subdivisions. The natural construction is that the circuit courts were intended to have jurisdiction, under both laws and ordinances, of such offenses as come within their jurisdiction under the laws defining such jurisdiction, and similarly as to district magistrates. The first subdivision does not purport to be a grant or definition of the jurisdiction of the circuit court, but is primarily a grant or definition as far as it goes of the powers and duties of the county attorney and his deputy. This accounts for the distinction between the first and third subdivisions so far as the present case is concerned and renders it unnecessary to account for such distinction on other grounds. The first subdivision was intended to apply to the county attorney and his deputy, while the third was intended to apply not only to those officers but to the sheriff and his deputies as well.

Apparently it was the intention to prosecute the case before the district magistrate in the name of the county. In our opinion it should be prosecuted in the name of the Territory.

Section 11 of the Organic Act provides that, "The style of all process in the Territorial courts shall hereafter run in the name of 'The Territory of Hawaii,' and all prosecutions shall be carried on in the name and by the authority of the Territory of Hawaii." In *Brownville v. Cook,* 4 Neb. 101, it was held that a somewhat similar provision applied to prosecutions under ordinances as well as to those under state laws. But the correctness of this decision has been questioned (1 Dillon, Mun. Corp., Sec. 424, note 1) and several other courts have held that provisions of this kind do not apply to prosecutions under ordinances, so as to render void statutes or ordinances that provide expressly that such prosecutions shall be in the name of the municipality, although possibly the cases which so hold are distinguishable from the present case. See *Davenport v. Bird,*

35 Ia. 524; *Spokane v. Robinson,* 6 Wash. 547 (but see *State
v. Fountain,* 14 Wash. 236); *Ex parte Boland,* 11 Tex. App.
159, and *Bautsch v. Galveston,* 27 Tex. App. 342 (11 S. W.
414), and similar rulings are said to have been made in Kan-
sas, Kentucky and Mississippi. 15 Enc. Pl. & Pr. 421. In the
present case there is no statute or ordinance that requires such
prosecutions to be in the name of the county. In the absence
of a constitutional provision or when such a provision is held
not to apply it is often provided by statute or ordinance that
such prosecutions shall be in the name of the municipality.
Sometimes, however, it is expressly provided that they shall
be in the name of the state or the people. *Goddard,* Petitioner,
16 Pick. 504; *Pillsbury v. Brown,* 47 Cal. 477; *State v. Robit-
shek,* 60 Minn. 123. In many cases, apparently in the absence
of any express provision on the subject, it seems to have been
taken for granted that such prosecutions when considered crim-
inal in their nature should be in the name of the State. *State
v. Stearns,* 31 N. H. 106; *State v. Nelson,* 40 Vt. 455; *State v.
Rowell,* 97 N. C. 417; *State v. Vail,* 57 Ia. 104; *Lynch v.
Commonwealth,* 35 S. W. (Ky.) 264; *State v. Carpenter,*
supra. Perhaps the language in *Snow v. U. S.,* 18 Wall. 317,
321, by analogy favors this view. In some cases it is held
that such prosecutions should be in the name of the state,
where the only statutory provision on the subject is of a gen-
eral nature, to the effect that proceedings shall be the same as
in other cases or that the general laws shall apply when not
otherwise provided. *People v. Vinton,* 82 Mich. 39; *Vicksburg
v. Briggs,* 85 Mich. 502. In *Santa Barbara v. Sherman,* 61
Cal. 57, it was held that such prosecutions should be in the name
of the people from the mere fact that they were criminal in
their nature.

As we construe it, the county act in question contemplates
that such prosecutions shall be in the name of the Territory
rather than in the name of the county, and in view of the law
as above set forth upon this general subject but little is required
to show such an intention. Not only are violations of ordi-

nances of the kind now in question criminal offenses within the jurisdiction of district magistrates, as above held, which alone might be sufficient to show that the procedure in prosecutions for them should be the same as in other criminal cases before such magistrates in the absence of any provision to the contrary, but the first subdivision of Section 90 of the act above quoted states that such prosecutions shall be conducted "on behalf of the people," which naturally means the people of the Territory and not the people of the county, and must be construed, since it refers to laws as well as ordinances, to mean "on behalf of the Territory."

Under all the circumstances shown by the petition and return, which need not be set out in full, we are of the opinion that the district magistrate should not be required to take any particular action, but that he should be required to take jurisdiction of the case and, if necessary, a writ may issue requiring him to do so.

*F. W. Milverton, Deputy County Attorney,* for petitioner.
*Respondent* in person; *W. T. Rawlins* with him.

### HARTWELL, J., CONCURRING.

The question of the power of the legislature to authorize counties as well as town and city municipalities "To regulate by ordinance within the limits of the county all local police, sanitary and other regulations not in conflict with the general laws of the Territory" involves consideration of important elementary principles. The maxim, *Delegata potestas non potest delegari,* that an "agent cannot lawfully nominate or appoint another to perform the subject matter of his agency" unless power of substitution is given, applies not only to transactions between principal and agent but to Congress and legislative bodies generally. Public attention is now directed to the question whether, assuming that Congress has constitutional power to enact laws regulating railway rates, it can delegate to an executive board the power to make rates from time to time, according to changing conditions.

In the present case the first thought which naturally suggests itself is whether the provision in the Organic Act "that the legislature may create counties and town and city municipalities * * * and provide for the government thereof" means that the legislature may provide for the government of counties by themselves within their county limits, as well as of town and city municipalities, in respect of "all local police, sanitary and other regulations not in conflict with the general laws of the Territory." Delegating certain legislative powers to municipal organizations, such as towns and cities, "has been found so essential to public welfare and its delegation has been so often sustained by judicial decision as to be established beyond question." Ingersoll, Pub. Corp., Sec. 116. Is there any valid reason why like powers may not be delegated to counties?

Grammatically the words "provide for the government thereof" may refer to counties as well as to town and city municipalities.

"It is true that, in strict grammatical construction, the relative ought to apply to the last antecedent; but there are numerous examples in the best writers to show, that the context may often require a deviation from this rule, and that the relative may be connected with nouns which go before the last antecedent, and either take from it or give to it some qualification. * * Suppose, for example, this phrase * * 'If there be any powers or provisions of an act of Parliament, of which the corporation are sole commissioners for executing,'—is it not obvious here that the relative 'which' refers to the 'powers and provisions,' and not to the 'act of Parliament?' " Abinger, C. B., *Staniland v. Hopkins,* 9 M. & W. 191.

It is not true that historically it is generally towns and cities rather than counties which have regulated their own affairs, although the powers of counties have more frequently been defined by general laws of the state, and restricted to administration of state laws, making them mere agencies of the state.

The student readily ascertains that the New England town is the administrative unit, as it is called, governed by its town meeting representing an intermediate stage between the munici-

pal and public quasi corporation; and that "in the southern states the county is the unit of political organization and administration" and hence counties in those states "are charged with the supervision or performance of all functions of local government" and the same is true partially of the "amalgamated system" in the middle states.   Ingersoll, Sec. 10; 1 Smith, Mun. Corp., Sec. 11.   It would not be correct, therefore, to say with reference to the whole country that:

"*A municipal corporation proper* is created mainly for the interest, advantage and convenience of the locality and its people; a *county organization* is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, or military organization, of the means of travel and transport, and especially for the general administration of justice."   1 Dillon, Mun. Corp., Sec. 23, citing *Hamilton Co. v. Mighels,* 7 Oh. St., 109.

It would also be incorrect to confine legislative power to grant local government to towns and cities by reason of their inherent powers of self control, meaning powers which, when left free to do so, they have been used to exercising.

Delegating to towns and cities a restricted and limited power to govern themselves cannot be based upon the theory that the inhabitants of those corporate bodies are merely allowed to resume original powers in that regard.

Nor can any distinction be based upon the fact that counties are usually created solely by legislative enactment with topographical limits and without consulting the wishes of those who dwell within those limits while towns and cities are a growth and usually are voluntary corporations requiring for their incorporation the consent of the inhabitants.   History shows that these organizations are formed or come into existence in various ways.

Moreover, if counties had always originated in one way and towns and cities in another, that fact would furnish no reason for restricting the power of local government to the latter.   In any point of view then, I see no reason for excluding from

counties the power granted by the Organic Act to the legislature to authorize self government within the well defined limits of similar power when granted to town or city municipalities. The ordinance in the present case is clearly authorized by the County Act, with the exception that the authority given by the County Act to "fix a penalty for the violation of such ordinances" cannot be deemed to authorize imprisonment. The question is not presented whether the Organic Act authorizes the legislature to delegate to counties the power to prescribe the penalty of imprisonment for violation of county ordinances. Referring, however, to the intention of this provision in the County Act "unless the authority be plainly given it does not exist." 1 Dillon, Mun. Corp., 2 Ed., Sec. 287. "In England such a power cannot be conferred by the Crown and can only exist by authority of Parliament or a special custom." n 3, Ib.

It will be seen that the foregoing discussion assumes that providing a government for towns and cities means providing for their self government, the argument being that as counties are classed in the same sentence with town and cities the intention is to grant to them like powers, as far as by the nature of those organizations is practicable.

I fully concur in the opinion of the court and in the decision.