## STATE OF CONNECTICUT *v.* JAMES MOLA ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued November 4—decided December 5, 1941.

*Sydney P. Simons,* with whom, on the brief, was *Henry Greenstein,* for the appellants (defendants).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

MALTBIE, C. J.  The information in this case charged that the appellants, with thirteen others, conspired "to set up and maintain a lottery" and that in furtherance of the conspiracy each participated "in the distribution and sale of lottery tickets, and the collection of the proceeds thereof."  All the defendants were found guilty and the appellants have appealed on the sole ground that while the jury could have found them guilty of a conspiracy to carry on policy playing in violation of § 6337 of the General Statutes, they could not properly find them guilty of conspiring to conduct a lottery or sell lottery tickets.  The gaming carried on by the defendants is popularly known as the "numbers game" or "betting on numbers."  It is a game of chance in which the player selects any number he chooses containing three digits and makes a bet on that number.  He gives the amount of his bet and the number to a "runner," who enters it on a small pad which, by the use of carbon sheets, produces two copies in addition to the original.  The player receives one copy, the runner retains the other, and the original, with the amount of the bet less a commission to which the runner is entitled, is delivered to a collector.  The winning number is determined each day by a computation based upon the prices paid on a pari-mutuel betting machine at a designated track for horse racing, as calculated and published in a certain New York newspaper.  The holder of a winning number receives, through the runner, six hundred times the

amount of his bet. The funds to make this payment are furnished by a "bank," through the collector. The defendant James Mola was a collector and the defendant Lewis Mola participated in the enterprise by delivering to a New York man the collections made by James Mola and delivering to James Mola the money furnished by that man with which to pay those holding the winning numbers.

In *State* v. *Carpenter,* 60 Conn. 97, 102, 22 Atl. 497, we quoted a definition of "policy" taken from Webster's Dictionary: "A method of gambling by betting as to what numbers will be drawn in a lottery." It may be conceded that the form of gambling involved in this case constituted the offense "commonly known as policy" within the provisions of § 6337. It does not follow, however, that it does not constitute a lottery. The three elements generally held to characterize a lottery are "a prize, a chance, and a price"; *State* v. *Dorau,* 124 Conn. 160, 168, 198 Atl. 573; or, as stated in *Commonwealth* v. *Wall,* 295 Mass. 70, 72, 3 N. E. (2d) 28, "a chance for a prize for a price." See Bishop, Statutory Crimes (3d Ed.) § 952. It has been generally held that policy playing is a form of lottery. *Forte* v. *United States,* 83 Fed. (2d) 612, 615, 65 App. D. C. 355; *People* v. *Hines,* 284 N. Y. 93, 101, 29 N. E. (2d) 483.

The defendants misconceive the scope of § 6337. It is primarily directed at the keeping or frequenting of places where the game of chance "commonly known as policy" is carried on or where bets or wagers are or are reputed to be made upon the result of a drawing in any lottery or of the drawing of any numbers by chance. It also provides a penalty where any person "shall write, sell, bargain, exchange, give, transfer, deliver, buy, collect or receive, or be concerned in writing, selling, bargaining, exchanging, giving, trans-

ferring. delivering or receiving, any policy slips, tickets, tokens, numbers or chances, used in said game of chance, business, scheme or occupation, or in wagering or betting upon the result of any drawing in any lottery, or in any drawing of any numbers by chance, or shall collect or receive, or be concerned in receiving or collecting, any money or other valuable thing for any such slips, tokens, numbers or chances, or shall play or take part in any way in such game of chance, business, scheme, occupation, betting or wagering, in or out of any such office or place . . . or shall make, manufacture or keep, or be the custodian of, any slips, tokens, papers, books, records or registers of bets or wagers, or any appliances or apparatus used for any such purposes." While the statute is entitled "Policy playing," it is not directed merely against that form of gaming but is much broader. It could better be described as addressed to the conducting or frequenting of places where lotteries are carried on or participating in gaming by the use of lottery slips or tickets. It does not make policy playing a distinct crime but treats it only as one form of gaming within the broader field covered by the statute. The gaming carried on by the defendants, although it might have been of the kind "commonly known as policy," was none the less in the nature of a lottery within the purview of the statute and could properly be so described. The fault, if any, was in the uncertainty of the allegations of the information. The remedy of the defendants, who undoubtedly knew well the nature of the offense which the state would try to prove against them, was by a motion for a more specific statement; and we cannot sustain the appeal upon the ground of such uncertainty unless it affirmatively appears that the defendants were in fact prejudiced in their defense upon the merits and that substantial injustice was done to

them because of the defect. Practice Book, § 310. There is no claim made of any such prejudice, but the appeal is one obviously based upon a mere technicality.

In *People* v. *Hines,* supra, the Court of Appeals of New York had before it an information charging that the defendant with others conspired to conduct lotteries known as the "numbers game" and "policy." The first contention of the defendant discussed in the opinion was that, upon being found guilty of an offense relating to policy, he could not be punished under the provisions of the penal law relating to lotteries. In a notable opinion the court not only disposes of that argument but of every other which the defendants advance in this case, and it would serve no purpose to review the opinion. None of the cases cited by the defendants are authority to the contrary. In *Francis* v. *United States,* 188 U. S. 375, 23 Sup. Ct. 334, the sole question was whether certain slips used in connection with a "numbers game" were documents representing "chances, shares and interests in the prizes thereafter to be awarded by lot in the drawings of a lottery, commonly known as a game of policy," the interstate transportation of which had been forbidden by the Congress, and the decision of the court merely held that the slips which were transported did not represent the purchasers' chances in the lottery. See *Forte* v. *United States,* supra, 616. The other cases cited by the defendants are not sufficiently in point to justify comment.

There is no error.

In this opinion the other judges concurred.