PAULA M. STE. P. MARQUIS *v.* JEAN L. MARQUIS (4201)

PAULA M. STE. P. MARQUIS *v.* JEAN L. MARQUIS (4230)

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 5—decided May 1, 1956

*Joseph F. Ryler,* with whom were *Harry Cooper* and, on the brief, *Frederick J. Rundbaken,* for the appellant (plaintiff).

*Frank R. Odlum,* for the appellee (defendant).

WYNNE, J. These two actions were tried together. In each, the court entered judgment for the defendant. From the judgments the plaintiff has appealed. In the first case, appropriate relief was sought on the claim that the defendant husband had neglected and was continuing to neglect the support of the plaintiff wife. The second action has to do with an accounting as to certain real estate held by the defendant. When the cases came on for argument, it was agreed by the plaintiff that the appeal in the support action was not being pressed. A divorce action is pending in the Superior Court in Hartford County in which the present defendant is plaintiff, and an order has already entered for alimony pendente lite.

A single finding applies to the instant cases. Likewise, there is but one assignment of errors. This has to do with the court's failure to adopt paragraphs in the draft finding, with the finding as made, with the conclusions drawn, and with the overruling of the plaintiff's claims of law.

The following is a summary of the facts found and not attacked: The plaintiff and the defendant

were married December 4, 1946, in Montreal, Canada, and thereafter lived in Maine until November, 1947, when they came to Hartford, where they have since lived. At the time of her marriage, the plaintiff had accumulated from her employment as a waitress and maid approximately $305, which was deposited in a bank in Fort Kent, Maine. The defendant was born in Maine, was drafted into the United States Army in 1941, and was discharged in December, 1943, as a totally disabled veteran. At the time of his discharge, he possessed $2000 in cash, about $2000 in savings bonds, and real estate worth about $1000. During the next three years he saved an additional amount, so that in 1946 he owned between $5000 and $7000 in savings bonds. At the time of the marriage, the plaintiff's bank account was changed to a joint account with the defendant. In the same bank, an account amounting to $1800 which stood in the defendant's name was changed to a joint account with the plaintiff. On December 1, 1947, the defendant opened an account in a Hartford bank with a deposit of $200. In April, 1948, this account amounted to $1001.57. In May, 1948, the defendant decided to buy a six-family tenement house known as 17-19 Ashley Street, Hartford. On May 13, 1948, he withdrew $500 from his Hartford bank account and paid it as a deposit toward the purchase. On May 17, 1948, he closed the joint account in Fort Kent which had originally been the plaintiff's $305 account and withdrew the then balance of $693.56. On the same date, he closed the joint account which had originally been his own $1800 account and withdrew the then balance of $1109.13. The withdrawals from the two accounts totaled $1802.69. On May 19, 1948, he deposited $1801.69 in his Hartford account, and on May 20, 1948, he withdrew $2200 from the account. He pur-

chased the Ashley Street property in his own name on May 24, 1948. The plaintiff was not present at the time the sale was closed, and there was never any discussion between the parties as to how title should be taken. The purchase price of the property was $19,000. It was transferred subject to a first mortgage of $9000, a second mortgage of $4370 and a third mortgage of $550. After taking into consideration the cash deposit of $500, the mortgages and adjustments, the defendant had to pay the seller $4254.68 in cash. On May 20, 1948, he had cashed at a bank in Hartford $2365.50 of his savings bonds. This sum, with the $2200 drawn from his bank account, he used to make the cash payment. The parties occupied the property as their home from October, 1948, until their final separation in January, 1954. The plaintiff is still living there.

On the basis of the foregoing facts, we can test the court's conclusion—disposing of the case—that the defendant purchased the property with his own funds and took title exclusively in his own name. It is clear that the wife's position on the appeals is hopeless if the finding remains uncorrected. The facts narrated lead logically to no other possible conclusion than the one reached by the court. *Trenchard* v. *Trenchard,* 141 Conn. 627, 631, 109 A.2d 250.

It is proper to draw reasonable and logical inferences from all the facts established. *Fandiller* v. *Peluso,* 139 Conn. 225, 228, 92 A.2d 734. The plaintiff relies on evidence to support her claim that the court erred in reaching its conclusions. The court's conclusions are to be tested by the finding. *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 358, 114 A.2d 216. The plaintiff really seeks to have this court retry the case. We cannot

do this. *Priday* v. *Bacon,* 125 Conn. 354, 357, 5 A.2d 709.

Neither party complied with the rule that an appendix should contain a narrative, rather than a transcript, of the evidence. Practice Book § 448. The defendant should not recover as part of his costs the expense of printing his appendix. Practice Book § 452.

There is no error in either case.

No costs shall be taxed in either case in favor of the defendant for the expense of printing the appendix to his brief.

In this opinion the other judges concurred.