STATE OF CONNECTICUT *v.* ANDREW FICO

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 6—decided June 14, 1960

*Howard A. Jacobs,* with whom, on the brief, were *Israel J. Jacobs, Stanley A. Jacobs* and *Richard L. Jacobs,* for the appellant (defendant).

*George R. Tiernan,* prosecuting attorney, for the appellee (state).

MELLITZ, J. The defendant was tried and acquitted in the Town Court of West Haven on a charge of violating § 53-298 of the General Statutes, which prohibits policy playing; at the same time, he was convicted of violating § 53-295, which prohibits pool selling. He appealed to the Court of Common Pleas, where he was found guilty of a violation of § 53-295, and he has brought this appeal. In the Court of Common Pleas, the case was submitted upon a written stipulation of facts. The defendant's effort to have the finding corrected to show only the facts stipulated must fail. The stipulation obviated the necessity of presenting evidence to establish the facts stipulated, but it did not preclude the court from drawing proper inferences from those facts. The court was entitled to draw reasonable and logi-

cal inferences from all of the facts established by the stipulation. *Marquis* v. *Marquis,* 143 Conn. 354, 357, 122 A.2d 586; *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591.

The defendant was arrested in the home of Frank Pagliuca, where there were found "Every Day" lottery bets, tally sheets, and a daily baseball line, all in the defendant's handwriting. The form of gambling involving Every Day lottery bets constitutes the offense commonly known as "policy," sometimes referred to as "policy playing." A tally sheet is a list of bets with the total of the bets. A baseball line shows the odds listed for betting upon the result of the games played by baseball teams on a particular day, and is comparable to a horse-racing scratch sheet. It is used in baseball pools and betting. No evidence was found of any baseball bets.

The contention of the defendant is that since no bets other than Every Day lottery bets were found, the only statute under which a conviction could have been had was § 53-298, relating to "policy playing." He contends further that after a finding of not guilty of violating § 53-298, a prosecution on the same set of facts on a charge of violating § 53-295 constituted double jeopardy and was in violation of the due process provisions of the federal constitution and the constitution of Connecticut. U.S. Const. Amend. XIV § 1; Conn. Const. Art. I § 9.

Section 53-295 is directed against the form of gambling known as pool selling, including bets or wagers upon the result of any trial of skill, speed or endurance. *State* v. *Scott,* 80 Conn. 317, 319, 68 A. 259; *State* v. *Harbourne,* 70 Conn. 484, 486, 40 A. 179. Pool selling consists of the receiving from several persons of wagers on the same event, the

total sum of which is to be given the winners, subject ordinarily to a deduction of a commission by the seller of the pool. 3 Wharton, Criminal Law and Procedure, p. 32. It does not constitute a lottery. Id., p. 75. Policy playing, on the other hand, is generally a form of lottery. *State* v. *Mola,* 128 Conn. 407, 409, 23 A.2d 126. It is a method of gambling by betting as to what numbers will be drawn in a lottery. *State* v. *Carpenter,* 60 Conn. 97, 102, 22 A. 497. Pool selling and policy playing are two distinct offenses and are so recognized by the legislature. Section 53-295 was originally enacted in 1893; Public Acts 1893, c. 68; and § 53-298, in 1895. Public Acts 1895, c. 190. Section 53-298 was enacted to deal with policy playing by a general statute of statewide application. Theretofore, the offense had been dealt with through municipal ordinances enacted under the authority of chapter 78 of the Public Acts of 1881. See *State* v. *Carpenter,* supra; *State* v. *Flint,* 63 Conn. 248, 250, 28 A. 28. Pool selling is regarded as the more serious. This is reflected in the penalties imposed in the two statutes. In *State* v. *Scott,* supra, 320, it was said as to pool selling of bets on horse races: "Common forms of gambling are comparatively harmless when placed in contrast with the widespread evil of this form of pool-selling."

Each of the statutes enumerates various acts which, if committed, will constitute a violation of its provisions, and each is directed to punishing, in addition to those who commit the main offense, persons who assist or are in any way concerned in its commission. "This pool-gambling is the substantive offense created. Persons concerned in the accomplished crime are made liable to its penalties. . . . While each specified mode of assisting in the accomplishment of the main offense is thus made an

offense, yet the definition of each mode is given for the purpose of making more certain the punishment of those concerned in the main offense, and should be read and interpreted in the light of this purpose." *State* v. *Scott,* supra, 324. Each statute makes it an offense for any person to maintain, or assist in maintaining, a place where the particular form of gambling proscribed may be carried on, or to be concerned in the doing of the acts involved in the main offense prohibited by the statute. Both forms of gambling may be carried on in the same place, and the evidence in a particular case may show acts which would warrant a conviction of either offense or of both offenses. The evidence here of Every Day lottery bets, with the other evidence in the case, might have warranted a conviction for policy playing under § 53-298. The fact that the defendant was acquitted of a violation of that statute did not, however, preclude the possibility of a conviction for pool selling under § 53-295, if the evidence showed acts establishing a violation of that statute. A conviction may be had for both offenses even though both crimes arose out of the same set of facts. *State* v. *Silver,* 139 Conn. 234, 244, 93 A.2d 154. "[W]here the same act combines the necessary elements of two or more distinct offenses, the difference not being merely one of degree, prosecution for one will not bar prosecution for another, and where one act constitutes several crimes, there may be a separate prosecution for each . . . ." *State* v. *Andrews,* 108 Conn. 209, 215, 142 A. 840.

The information charged the defendant with pool selling in violation of the statute. One subdivision of § 53-295 makes it an offense for any person to be "concerned in buying or selling" any pool upon the result of any contest or game. The conclusion of the

trial court was that the "defendant was concerned with the buying and selling of pools upon the results of baseball games." A person is concerned in a certain matter when he has some connection with it, when it affects his interests or involves him. *State* v. *Genova,* 141 Conn. 565, 568, 107 A.2d 837. The evidence is that the defendant was arrested in the home of another where there were found in the cellar slips listing Every Day lottery bets, tally sheets containing a list of bets, and a paper, known as a baseball line, which listed baseball teams and the daily odds for betting upon the result of the games in which teams were playing. These articles or papers could have no function or purpose except in connection with gambling; and the baseball line, only in connection with pool selling. All of these materials were in the handwriting of the defendant. The trial court was amply warranted in concluding that the defendant was concerned with the buying and selling of pools upon the results of baseball games and was guilty of a violation of § 53-295. Particularly is this so since, to constitute a violation, the actual making of bets is not required. *State* v. *Rich,* 129 Conn. 537, 540, 29 A.2d 771; cf. *Motley* v. *Commonwealth,* 177 Va. 806, 810, 14 S.E.2d 28.

There is no error.

In this opinion the other judges concurred.