STATE OF CONNECTICUT *v.* JOHN M. RAFANELLO

KING, C. J., MURPHY, SHEA, ALCORN and SHAPIRO, Js.

454

Argued February 6—decided March 3, 1964

*Morton C. Hansen, Jr.,* with whom, on the brief, was *David L. Gussak,* for the appellant (defendant).

*Harry W. Hultgren, Jr.,* assistant state's attorney, with whom, on the brief, were *John D. LaBelle,* state's attorney, and *George D. Stoughton,* assistant state's attorney, for the appellee (state).

ALCORN, J.  The defendant was tried before a jury on an information alleging, in its first part, that "John D. LaBelle, State's attorney for the County of Hartford, accuses John M. Rafanello, of Bristol, Connecticut, of POOL SELLING, and charges that at the City of Bristol, on or about the twenty-fourth day of July, 1961, the said John M. Rafanello

was concerned in buying and selling pools upon the results of horse races, in violation of Section 53-295 as amended by Public Act 528 of the 1961 Public Acts." The second part of the information charged the defendant with being a second offender, to which he pleaded guilty, and that part of the information is not in issue. The jury rendered a verdict of guilty on the first part of the information. The defendant made a motion to set aside the verdict, which the court denied, and this appeal is from the final judgment.

The police surprised Alfred Bartolucci, at his place of employment, in the act of telephoning bets on horse races, which were recorded on slips of paper found in his possession. There was evidence from which the jury could have found that the person to whom Bartolucci was telephoning the bets was the defendant. The jury could also have found that Bartolucci had an arrangement with the defendant whereby the latter would pay Bartolucci a commission on bets placed through him, that the defendant would furnish any money necessary to pay the winners, and that betting accounts between Bartolucci and the defendant were settled weekly on Sunday. The only defense made at the trial was that the defendant was not the person to whom Bartolucci was talking on the telephone.

There is no dispute that Bartolucci was in the act of telephoning bets on horse races to someone and that the slips of paper which the police found in his possession were records of these bets. Nor is there any denial that the betting transaction would, if proved, involve the defendant in an illegal activity under § 53-295, as amended by Public Acts 1961, No. 528, § 1. The defendant's only attack on the verdict is that the state's evidence fails to sup-

port a conviction for pool selling, which has been defined as "the receiving from several persons of wagers on the same event, the total sum of which is to be given the winners, subject ordinarily to a deduction of a commission by the seller of the pool." *State* v. *Fico,* 147 Conn. 426, 428, 162 A.2d 697. Stated in another way, the defendant asserts that while the evidence would have warranted a conviction for taking bets on horse races, it did not support a conviction for pool selling, although both acts are illegal under the statute.

It is clear that if the information had charged the defendant with "pool selling . . . in violation of § 53-295 as amended by Public Act 528 of the 1961 Public Acts," it would have been a sufficient information under the rules. Practice Book, 1963, § 493; *State* v. *Mele,* 140 Conn. 398, 402, 100 A.2d 570. The statute has been construed to be "directed against that form of gambling known as pool-selling, including bets or wagers on the result of any trial of skill, speed, or endurance." *State* v. *Scott,* 80 Conn. 317, 320, 68 A. 258; *State* v. *Fico,* supra. The defendant maintains, however, that the information, by particularizing that the defendant "was concerned in buying and selling pools upon the results of horse races," restricts the state to proof of pool selling as defined above in order to obtain a conviction. This record does not require us to decide that question.

The claim thus made, which is essentially one of variance, is suggested for the first time on this appeal. The defendant made no claim of variance during the trial, nor did he object to the admissibility of any evidence on the ground of variance. In the absence of a showing of substantial injustice, we do not, on appeal, entertain a claim which was

not advanced in, or passed upon by, the court below. *State* v. *Wyman,* 118 Conn. 501, 508, 173 A. 155. The proper way for the defendant to have asserted the claim which he now makes would have been by timely objection to evidence offered at the trial. An appeal from the denial of a motion to set aside the verdict is not a proper means by which to attack the alleged variance. *Chapin* v. *Popilowski,* 139 Conn. 84, 86, 90 A.2d 167. If the variance had been suggested below, it would not, had the court found it to exist, have been a ground for acquittal but would have permitted any amendment of the information necessary to make it conform to the proof. Practice Book, 1963, § 525. The defendant can gain nothing from this late claim without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Mola,* 128 Conn. 407, 410, 23 A.2d 126; Maltbie, Conn. App. Proc. § 211; 5 Wharton, Criminal Law and Procedure § 2056, p. 202. Since his entire defense was that he was not the man to whom Bartolucci was talking on the telephone, and consequently that he was not involved in any offense under the statute, we cannot say that he was prejudiced in his defense by the language of the information. The statute provides the same penalty for a violation of any one of the several betting activities which it prohibits. If the jury concluded that the defendant was the person involved in the telephone conversation with Bartolucci, as the verdict indicates that they did, then the defendant tacitly concedes that he was guilty of a crime which was punishable under the statute.

There is no error.

In this opinion the other judges concurred.